Thomas A. BRADY, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 82–6087
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 9, 1984.

Legal Aid Service of Broward Co., Inc., Alexander J. Rering, Lighthouse Point, Fla., for plaintiff-appellant.

Stanley Marcus, U.S. Atty., Lloyd G. Bates, Jr., Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for defendant-appellee.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Following an adverse decision by the Secretary of Health and Human Services, Thomas A. Brady sought review of that decision in the United States District Court for the Southern District of Florida, pursuant to 42 U.S.C.A. § 405(g). The district court, after a hearing before a magistrate, upheld the Secretary's denial of benefits; Brady now appeals to this court. We hold that the Secretary's decision that Brady does not suffer from a severe physical impairment is not supported by substantial evidence and remand the case to the Secretary for a full evaluation of all the evidence, and for a complete development of the record consistent with the views expressed in this opinion.

### BACKGROUND

Thomas A. Brady, born March 22, 1932, applied for disability insurance benefits on July 9, 1979, alleging an inability to work as of November 6, 1977, because of hypoglycemia, emphysema, and pericarditis. Brady has a tenth-grade education, and has worked as a drywall finisher and driver.

Brady's health problems began in November, 1977, when he started complaining of shortness of breath, dizziness, cough, and chest pain. Dr. Albert A. Dunn, a radiologist, remarked on November 2, 1977, that Brady's lung fields appeared somewhat emphysematous. In early November, 1977, Brady fainted at work and was taken to the hospital. Dr. Andres Martorell, Brady's treating physician, diagnosed Brady as suffering from acute pericarditis (inflammation of the fibrous sac that surrounds the heart) and hypoglycemia (condition caused by an abnormally diminished content of glucose in the blood). After discharge from the hospital, Brady continued having chest pain and dizziness. On February 10, 1978, Brady entered Broward General Medical Center for further evaluation and treatment. The physical examination was essentially negative, and a pancreatic scan appeared normal. Treadmill exercises were stopped because of subjective fatigue and dyspnea (labored breathing). During his hospitalization, Brady received a hypoglycemic diet. After developing dizziness, blurred vision, and having a blackout, he was again admitted to Broward General Medical Center on March 6, 1978. Before being taken to the hospital, Brady was given peanut butter and food at home. He was then taken to the hospital emergency room where a blood sugar test was performed and revealed a level of 100. He was admitted for more evaluation and treatment. Again, the physical examination was essentially negative. Because Brady complained of dizziness, Dr. Farrell was called on consultation to eliminate the possibility of inner ear problems. Dr. Farrell removed wax and cerumen from Brady's ears, and stated that he thought this made Brady dizzy and weak. Brady was discharged. The final diagnosis was that Brady suffered from hypoglycemia by history, cerumen block in both ears, and dizziness.

In June, 1979, Brady became depressed. Dr. Martorell referred Brady to the Henderson Clinic of Broward County, Inc., a mental health clinic, where Dr. Ramierez, a psychiatrist, diagnosed Brady as suffering from "reactive depression due to forced retirement (physical disabilities)," and recommended both individual and group psychotherapy to aid Brady in coping with his feelings of being an inadequate provider and other problems contributing to his depression. Dr. Ramierez did not prescribe any medication for Brady due to his heart problems. Dr. Ramierez states that Brady is not psychotic, has good memory, has insight into his problems, is of average intelligence, and exhibits no evidence of perceptual disorders.

On July 30, 1979, Dr. Joel Rapchik performed a consultative medical examination at the request of the Social Security Administration. Brady presented a medical history of shortness of breath, hypoglycemia, and chest pain of approximately two years' duration. Brady described the chest pain as a stabbing sensation without radiation oc-

curring once weekly and lasting for two minutes. The neurological examination revealed Brady to be alert, oriented, and cooperative, with no restriction of interest or activities, no deterioration in personal habits, and no impaired ability to relate to others. Brady's chest x-ray was normal and pulmonary function testing was consistent with normal functioning lungs. Dr. Rapchik concluded that Brady suffered from hypoglycemia, by history; s/p pericarditis, by history; shortness of breath, etiology undetermined.

On August 12, 1980, Ann Griffin, M.S.W., a psychotherapist who had seen Brady in thirteen individual sessions from January to August, 1980, reported that:

This patient [Brady] is severely depressed with presenting problems of fatigue, excessive sleeping at times (versus difficulty sleeping at times), loss of interest, and poor motivation. This depression was precipitated by loss of ability to work and support his family due to medical problems including emphysema. According to the patient he was not depressed before the initiation of his problems and his subsequent inability to work.

Mr. Brady's self esteem and sense of woth [sic] was very connected to his working and providing for his family for many years. It is my opinion that his depression will not likely be lessened to any evident degree unless he can again provide for his family. I strongly recommend that Mr. Brady be granted Social Security disability at this time.

At the administrative hearing held April 3, 1980, Brady testified that he suffered from dizzy spells, breathing problems, and occasional chest pains. He stated that he cannot lift, bend, or raise his arms over his head, and that he has trouble breathing in muggy and in cold weather. Brady stated that he can walk about one-half block before tiring and can sit for two hours. Brady testified that he can stand for an hour if he is leaning on a chair. Brady stated that he has sleeping and circulation problems, and that his arms and hands go numb. Brady stated that he last had a severe dizzy

spell only three days prior to the hearing. The severe dizzy spell occurred after he tried to screw a track in a door. He described the dizzy spell as follows:

Well, first I become light headed. Then I sit down. Then it stops. With blurred vision and I get very nervous, and then I start to breathe heavy so I just have to sit down and relax, and I breathe in a paper bag for a while and in due time (inaudible).

Brady testified that he has these dizzy spells an average of twice a week. Brady's wife testified at the administrative hearing that:

He [Brady] don't socialize at all, because he gets these attacks so frequently, and he don't like anybody to see him taking these attacks. And when he gets them, it is unbelievable how he gasps for breath. And he has to keep calm. And we all try to keep him as calm as possible, because any excitement and any excess movement, he gets these attacks.

After entry of the magistrate's review and recommendation, Brady filed Plaintiff's Request for Reconsideration of the Review and Recommendation, requesting consideration of the deposition of Brady's treating physician, Dr. Andres Martorell. The magistrate thereafter entered a supplemental review and recommendation, setting out an analysis of the deposition testimony of Dr. Martorell, and concluding that, "the plaintiff's submissions for reconsideration are not persuasive. There is little in Dr. Martorell's deposition that was not present also in the record before the administrative law judge and available for his consideration." Dr. Martorell stated, in his deposition, that "my final impression is that this man [Brady] has hypoglycemia, vertebro vascular insufficiency, pericarditis, and mild emphysema. All this conditions together make him dizzy, shortness of breath and occasional chest pain, and this make him unable to work." Dr. Martorell was asked to comment on the initial test of Brady regarding the emphysema which indicated negative findings. Dr. Martorell stated:

A chest x-ray done in November 2, 1977, the impression was of the cardiologist, Dr. Albert Dunn, was not of this pathology. The lung field appeared somewhat emphysematic. The pulmonary function test done at Broward General Medical Center was within normal limits. This doesn't mean that the patient doesn't have emphysema. He was evaluated by Dr. Richard Lippman, internal medicine, Miami. The x-ray at that time showed fibrotic changes and Dr. Lippman agreed with the diagnosis of chronic obstructive lung disease.

Brady is receiving an award of disability benefits from the Veteran's Administration (100 percent disabled).

The administrative law judge concluded that the medical evidence in the case failed to establish that Brady had any impairment or combination of impairments which significantly affected his abilities to perform basic work related functions for the required one-year period. The demonstrable medical proof, according to the administrative law judge, did not support Brady's allegations regarding the severity of his impairments.

> It is considered the opinion of the undersigned that in the instant case, the claimant's alleged chest pain is occasional and intermittent and there is no clinical evidence of any disabling impairment. Likewise, the record indicates the claimant's depression is well controlled with psychotherapy and no severe psychiatric impairment is shown by the clinical evidence. The record indicates that claimant has fully recovered from his pericarditis; there is no clinical evidence to support claimant's allegation of emphysema; and by following a strict diet, claimant's hypoglycemia is well controlled; his only medication is Tagamet.

The administrative law judge concluded that the claimant has no severe impairment and, therefore, is not disabled within the meaning of the Social Security Act, as amended.

## DISCUSSION

The administrative law judge concluded that Brady has no severe mental or physical impairment hindering his ability to perform basic work related functions. "Under the applicable regulations of the Secretary, such a finding is sufficient to support a denial of Social Security disability benefits even though no specific inquiry is made concerning a claimant's ability to perform his past relevant work." *Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.1981).

The Secretary's regulations governing determinations of disability within the meaning of the Social Security Act set forth a specific sequential process of evaluation to be employed in assessing disability claims. The regulations provide that 'in determining whether an individual is disabled, a sequential evaluation process shall be followed whereby current work activity, severity of the impairment(s), and vocational factors are assessed in that order.' 20 C.F.R. § 404.-1503(a) (1980). Specifically, the regulations provide that in making a determination of disability or no disability, the first inquiry shall be whether the individual is currently engaged in substantial gainful activity. If the individual is not currently engaged in substantial gainful activity, the inquiry then focuses on the question whether the individual has any 'severe impairment.' If a finding is made that the claimant does not have any severe impairment, i.e., one 'which significantly limits his or her physical or mental capacity to perform basic work related functions,' the regulations direct that 'a finding shall be made that he or she does not have a severe impairment and therefore is not under a disability *without consideration of the vocational factors.'* [Emphasis in original.]

Thus, although our usual focus in reviewing Social Security disability determinations is on the questions whether the claimant carried the burden of showing that he or she could no longer perform his or her customary work and if so whether the Secretary carried the rebuttal burden of showing that there was, nevertheless,

work available in the national economy which the claimant could perform, the regulations expressly provide that in some instances a disability determination may be made on the basis of medical evidence alone without consideration of these vocational factors where the medical evidence indicates that the claimant does not have a severe impairment. In such cases the question properly presented for our review is whether the Secretary's determination that a claimant is not suffering from a severe impairment is supported by substantial medical evidence.

*Lofton,* 653 F.2d at 217–18 (citations omitted, footnote omitted).

It is clear that in reviewing an administrative determination that a claimant's disability is not severe, this court must apply the substantial evidence test .... The substantial evidence test is, of course, a familiar one, requiring that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance.

*Jones v. Schweiker,* 551 F.Supp. 205 (D.Md. 1982).

We are straitly confined by 42 U.S.C. § 405(g) to determining, upon careful review of the entire record, whether it contains substantial evidence to support the Secretary's findings. This does not mean we affirm on gossamer. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Anderson v. Schweiker,* 651 F.2d 306 (5th Cir.1981).

In an action seeking disability benefits, the burden is upon the claimant to demonstrate existence of a disability as defined by the Social Security Act. *Fortenberry v. Harris,* 612 F.2d 947 (5th Cir.1980). The key point then becomes what is meant by a severe impairment.

■ In *Lofton,* the court stated that a disability determination is made on the basis of medical evidence alone, without consideration of vocational factors where the

medical evidence indicates that claimant does not have a severe impairment. In the amended regulations of 1968, the Secretary stated: "Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities." 20 C.F.R. § 404.1502(a) (1968). In the 1978 regulations, the Secretary stated:

Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work related functions a finding shall be made that he/she does not have a severe impairment, and therefore is not under a disability without consideration of the vocational factors.

20 C.F.R. § 404.1503(c). The 1978 regulations were modified in 1980 to state:

If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c).

(b) Basic Work Activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) capacities for seeing, hearing, and speaking;

(3) understanding, carrying out, and remembering simple instructions;

(4) use of judgment;

(5) responding appropriate to supervision, coworkers, and usual work situations; and

(6) dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

The administrative law judge in this case applied the 1978 definition of severe impairment. Subsequent to the decision of the

administrative law judge, the 1980 regulations were set forth. However, the magistrate continued to apply the 1978 regulations used by the administrative law judge. The government, in its brief, addressed its argument solely to the 1978 regulations. It is contended by Brady that the magistrate, district court, and this court should look to the 1980 regulations for an analysis of the term severe impairment. Brady has cited no decision which would bind this court to look solely to the 1980 regulations. We recognize, however, the decision of the Supreme Court in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), which stated that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. The *Bradley* Court, however, was not looking at the application of regulations. In the case before this court, in that the parties, administrative law judge, magistrate, and district court primarily looked to the 1978 regulations, that will be the basis upon which this decision is based. Though this court will proceed primarily under the 1978 regulations, it is clear that the 1978 and 1980 regulations' definition, analysis, and interpretation of the term severe impairment are, for all intents and purposes, identical.

■ A court which applies either the 1978 or 1980 regulations would reach the same result in this case. There is no substantial difference between the two sets of regulations in regards to a finding of a non-severe impairment. Though the 1968, 1978, and 1980 regulations use different words to describe severe impairment, it is clear from an analysis of the cases that the definition of severe impairment has not changed throughout the years.

In the 1978 regulations, the Secretary stated that the definition "a medically determinable impairment is not severe if it does not significantly limit an individual's physical or mental capacity to perform basic work related functions" is a clarification of the previous regulation's terms "a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities." It is a clarification, not a change, in the definition of severe impairment. The court, in *Chico v. Schweiker,* 710 F.2d 947 (2d Cir.1983), reinforced the fact that the definition of severe impairment has not changed over the years.

> The Secretary's preamble in the Federal Register reveals that the 'severity' regulation, as originally promulgated in 1978, was meant to clarify the 1968 regulation's terms 'a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of slight abnormalities' but was not intended 'to alter the levels of severity for a finding of ... ['] not disabled ['] on the basis of medical considerations alone,' 43 F.R. 55358. The recodification in 1980 evinced no change in this expression of the Secretary's intent, 45 F.R. 55574.

*Chico* at 954–55, n. 10.

There has been no attempt to alter the levels of severity for a finding of not disabled on the basis of medical considerations alone (i.e., a finding of non-severe impairment). In defining a non-severe impairment under the 1968, 1978, and 1980 regulations, we must turn to the 1968 regulation's terms, "a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities."

In a document entitled "Appeals Council Review and Sequential Evaluation Under Expanded Vocational Regulations," attached to a January 30, 1980, memorandum from the Appeals Council regarding its cumulative findings on appraisal of appealed cases during 1979, the Appeals Council set forth its policy regarding findings of severe or not severe:

> The Appeals Council, therefore, specifically considered the issue of when an impairment(s) should be considered as 'not severe' within the meaning of these regulations. The Council concluded in a minute that the definition contained in regulations 404.1503(c) and 416.903(c) was not intended to change, but was merely a

clarification of the previous regulatory terms 'slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities ...' In other words, an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Appeals Council Review of Sequential Evaluation Under Expanded Vocational Regulations* (1980).

The 1978 regulations were not meant to alter the level of severity for a finding of not disabled on the basis of medical considerations alone. Under the 1968 and 1978 regulations, an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

The 1980 recodification stated that impairment is not considered severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. Though the regulation adds new language to the definition of severe impairment, the key point is that which was raised by the court in *Chico;* the recodification in 1980 evinced no change in expression of the Secretary's intent as to the levels of severity needed for finding of not disabled on the basis of medical considerations alone. *Chico,* 710 F.2d at 955. The court in *Jones* defined the 1980 term "significant" limitation as (1) having a meaning, (2) deserving to be considered, and (3) not meaningless. *Jones,* 555 F.Supp. at 208. The limitation must not be meaningless. This approach is, thus, identical to the 1968 language which states that the impairment must not be slight. From *Chico* and *Jones* it is clear that the 1980 regulations follow the 1968 and 1978 definition of a severe impairment.

The level of severity needed for a finding of not severe has not changed from the 1968 regulations. The 1978 and 1980 regulations follow the 1968 definition of a non-severe impairment. An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Under this definition of non-severe impairment, it is clear that the Secretary's determination that Brady was not suffering from a severe impairment is not supported by substantial medical evidence.

At the administrative hearing, Brady testified that he suffered from dizzy spells, breathing problems, and occasional chest pains. Brady testified that he last had a severe dizzy spell three days prior to the hearing. "Well, first I become light headed. Then I sit down. Then it stops. With blurred vision and I get very nervous, and then I start to breathe heavy." Brady testified that he had dizzy spells as often as three or four times a week, averaging twice a week. Brady's wife testified at the administrative hearing that her husband had frequent attacks, "and when he gets them, it is unbelievable how he gasps for breath." Dr. Martorell, in his deposition, stated that Brady suffers hypoglycemia, vertebro vascular insufficiency, pericarditis, and mild emphysema. These conditions, according to Dr. Martorell, cause Brady to suffer occasional chest pain, dizzy spells, and shortness of breath. Dr. Martorell stated that Brady was evaluated by Dr. Lippman who agreed that Brady was suffering from chronic obstructive lung disease.

Brady, after fainting, was admitted to North Beach Medical Center in November, 1977. The final diagnosis was acute pericarditis and hypoglycemia. In November, 1977, Dr. Albert A. Dunn stated that Brady's lung fields appear somewhat emphysematous. In March, 1978, Brady was admitted to Broward General Medical Center complaining of dizziness, blurred vision, and blackout. The final diagnosis in March, 1978, was that Brady was suffering from hypoglycemia by history, cerumen block in

both ears, and dizziness. Even Dr. Rapchik, whose opinion was relied upon so strongly by the administrative law judge, stated that "Brady suffered from hypoglycemia by history; s/p pericarditis by history; and shortness of breath, etiology undetermined."

Dr. Ramierez, a psychiatrist, diagnosed Brady as suffering from reactive depression due to forced retirement. Ann Griffin, MSW, following thirteen individual psychotherapy sessions with Brady, stated that Brady is severely depressed with presenting problems of fatigue, excessive sleeping at times (versus difficulty sleeping at times), loss of interest, and poor motivation.

Brady is receiving an award of disability benefits from the Veteran's Administration (100 percent disabled). "Although the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight." *Olson v. Schweiker,* 663 F.2d 593 (5th Cir.1981), *citing to Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir.1981).

An individual who suffers from pericarditis, hypoglycemia, vertebro vascular insufficiency, mental depression, and possible emphysema, is not suffering from a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of slight abnormalities. Brady's medical problems were not slight abnormalities. If indeed, as the Appeals Council stated, a non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience, it is clear that Brady suffered from a severe impairment. Hypoglycemia, pericarditis, and emphysema together create more than a slight abnormality or slight neurosis. The conclusion by the administrative law judge that Brady is not suffering from a severe impairment is not supported by substantial medical evidence. There is no substantial evidence in the record to support the administrative law judge's decision that Brady does not suffer from a severe impairment.

This case is remanded to the Secretary to take the next steps in the sequential evaluation mandated by the regulations. On remand, the administrative law judge should carefully consider whether the evidence is sufficient to support a conclusion that Brady's severe impairments preclude him from performing his past work, and, if so, whether the Secretary carried the rebuttal burden of showing that there is, nevertheless, work available in the national economy which Brady can perform.

REMANDED.