Adelina LORENZO, SSN
264–76–9347, Plaintiff,

v.

Margaret M. HECKLER, Defendant.

No. 83–1457–Civ.–Hastings.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 1, 1985.

Marvin J. Kristal, Miami, Fla., for plaintiff.

Marilynn Koonce, Asst. U.S. Atty., Miami, Fla., for defendant.

### FINAL ORDER

HASTINGS, District Judge.

Upon review of the Report and Recommendation of United States Magistrate Herbert S. Shapiro, and upon independent review of pertinent parts of the entire record herein, it is hereby

ORDERED AND ADJUDGED that said Report and Recommendation is hereby adopted, and the cause be, and the same is hereby, remanded back to the Secretary of

the Department of Health and Human Services for further proceedings.

## REPORT AND RECOMMENDATION

HERBERT S. SHAPIRO, United States Magistrate.

This is a review of the final decision of the Secretary of Health and Human Services of the United States of America who has denied the application of Adelina Lorenzo for Disability Insurance Benefits pursuant to 42 U.S.C.A. § 405 *et seq.*

The cause has been referred to the undersigned by the Honorable Alcee L. Hastings, United States District Judge, for a report and recommendation in accordance with 28 U.S.C. § 636(b).

## SUMMARY OF FACTS AND CONCLUSIONS OF LAW

The defendant Secretary has promulgated Regulations to be followed in evaluating claims of disability. 20 C.F.R. § 404.1 *et seq.* (1984). Section 404.1520 outlines a five-step sequential process which determines whether an individual is disabled within the meaning of the Social Security Act.

Evaluation of disability begins with whether the claimant is presently engaged in substantial gainful activity. If so, then a finding of no disability is made. 20 C.F.R. 404.1520(b) (1984). If not, the second inquiry is whether the claimant suffers from a "severe" impairment which significantly affects basic work related activities. 20 C.F.R. § 404.1520(c) (1984). If so, the inquiry progresses. If not, then a finding of no disability is made. In this case the defendant Secretary found that the plaintiff does not suffer from a severe impairment, and accordingly determined that the plaintiff is not disabled within the meaning of the Social Security Act.

The Regulations define basic work related activities as the abilities and aptitudes necessary to do most jobs. Examples of these include:

Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.

20 C.F.R. § 404.1521 (1984).

The issue presented is whether the defendant Secretary's finding that the plaintiff does not have any impairment which significantly limits the ability to perform basic work-related functions is supported by substantial evidence.[1] As will be demonstrated below, the Secretary's finding is not supported by substantial evidence. Therefore, the cause must be remanded for the Secretary to continue the sequential evaluation. *Boyd v. Heckler,* 704 F.2d 1207, 1211 (11th Cir.1983).

## EVIDENCE

From 1962 through 1978 the plaintiff was employed as a sewing machine operator in the Miami, Florida, area. At the administrative hearing, the plaintiff testified that she was unable to work after 1978 because of back pain and diminished sensory perception in her hand.

On April 16, 1979, the plaintiff was admitted to Variety Children's Hospital in Miami, Florida, for her back pain. On April 18, 1979, she underwent surgery to alleviate idiopathic thoracolumbar scoliosis. Attending physician and surgeon, Harry Shufflebarger, performed a Harrington rod instrumentation and spinal fusion, wherein a five inch rod was inserted into the plaintiff's body to ease the plaintiff's condition. Upon her discharge, the plaintiff's lumbar spine curve had improved from 60° to about 30°. (Administrative Record, hereinafter referred to as "R", p. 87). After being placed in a body cast for nine months (R.105), the plaintiff was taught how to

---

1. The leading case defining a non-severe impairment states:

An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984).

walk. She was scheduled for office appointments with Dr. Shufflebarger.

In a letter to the Florida Department of Health and Rehabilitative Services dated December 28, 1981, Dr. Shufflebarger wrote:

The above named individual has idiopathic scoliosis and underwent a spinal fusion for this in April, 1979. She has a pseudoarthrosis and fracture of the rod although her back pain is negligible. She has a rather marked limitation of spinal motion due to spinal fusion. She has symptoms compatible with carpal tunnel syndrome on the right being treated.

She is unable to use her right hand for sustained fine movements. She is unable to climb, stoop, bend or lift.

R.99.

In support of the Secretary's decision is a report by Forrest H. Foreman, M.D., F.A.C.S., dated January 28, 1982. Based on one examination, Dr. Foreman stated that the plaintiff's back motion was slightly limited and noted rigidity in the fused area which is the lower dorsal and lumbar spine. Further, he observed decreased sensation over the thumb, index and the middle finger of the right hand without weakness of the grip. Finally, Dr. Foreman commented that the plaintiff apparently has no discomfort from the spinal fusion procedure, but tires easily and she has incipient carpal tunnel syndrome.[2] R.100–101. Attached to this report is a range of motion chart showing the plaintiff's lumbar spine flexion extension to be 70° of a possible 90°, and a lateral flexion of 10° of a possible 20°. The plaintiff's range of motions in all other measured aspects was 100%. R.102–103.

On October 1, 1982, Dr. Shufflebarger addressed a letter to "Whom It May Concern" stating:

The above named individual has been under my care for many years. In 1979 she underwent Harrington rod instrumentation and spinal fusion. This was for marked thoracolumbar scoliosis with dis-

abling back pain. She made satisfactory recovery from her surgery. She had some evidence of pseudoarthrosis which subsequently emerged with a minor loss in her correction. At the present time, she is not permitted to engage in any activities requiring lifting more than 8–10 pounds. Climbing, bending, twisting, pushing or pulling is, likewise, not permitted. In addition, she is not allowed to sit more than 20–30 minutes at a time.

R.109.

■ The conclusion of the treating physician is a mirror image of the conclusion of the consultative physician. Both doctors agree that the plaintiff's lumbar spinal curve is approximately 30° and that spinal fusion has occurred, but they disagree as to the impairment's affect on basic work activities. The treating physician asserts that the plaintiff has marked limitation of spinal motion, but the consultative physician asserts that the plaintiff has slight limitation of spinal motion. The treating physician has not put forth any supporting medical evidence. On the other hand, the consultative physician has submitted a chart of body motion ranges. However, the plaintiff's lumbar, lateral flexion is only half of what is expected (i.e., 10° of 20°). In addition, the record does not indicate the effect of a lumbar spinal flexion reduced from 90° to 70°. Both physicians have put forth conclusory opinions concerning the plaintiff, and neither sets forth substantial evidence of the impairment's severity or non-severity. The treating physician's opinion, however, is entitled to substantial weight, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir.1983), and *Pitsiniagas v. Heckler*, 740 F.2d 977 (11th Cir.1984).

■ While the record does not show that the treating physician's opinion of October 1, 1982, is based on any specific or individual item, Dr. Shufflebarger does point out that "the above named individual has been under my care for many years". "Many

---

**2.** Carpal tunnel syndrome is caused by pressure on the median nerve as it passes through the space formed by the bones of the wrist and the transverse carpal ligament.

years" of observation and treatment outweighs a single consultative visit or examination. The treating physician (certainly one of many years) feels the patient, senses the patient, studies the patient, ascertains progress, stabilization or regression, and can discern malingering, if any. The consultation, however, is a one shot visit of a stranger to a stranger. It is not to be disregarded, but is not, without more, entitled to the same weight as that of the many year treating physician.

The plaintiff's testimony at the administrative hearing supports a finding of a severe impairment. She testified that she is unable to work because of her back and hand problems. Since April, 1979, she visits Dr. Shufflebarger approximately four times per year. R.29. She testified that she cannot stoop or bend because of the rod in her back (R.3) and that she does not perform the household chores. R.30. In addition, the plaintiff does not drive, goes to church "once in a while", walks only short distances, hardly ever goes shopping, and does not go to the beauty parlor. Although the plaintiff is able to dress, bathe, and pick up a phone book, due to the lack of sensitivity in her hand, she is very careful when she cooks. R.32. In sum and in accordance with her physician's conclusory opinion, the plaintiff's scoliosis interferes with her household chores and social activities. The plaintiff's carpal tunnel syndrome inhibits her ability to handle objects, but does not affect her strength.

■ The Administrative Law Judge (hereinafter referred to as ALJ) found that the plaintiff has incipient carpal tunnel syndrome, but that it does not affect her ability to perform work related functions, and thus is not a severe impairment. The only evidence concerning the plaintiff's carpal syndrome condition is that it prevents her from making fine hand movements (i.e., her hand becomes numb). R.32,99. As stated previously, the Regulations provide that handling is a basic work activity. Therefore, the ALJ's finding of non-severe impairment is not supported by substantial evidence.

In finding that the plaintiff does not suffer from a severe impairment, the ALJ found her testimony not credible to the extent alleged. However, the ALJ did not put forth any reasons for rejecting the plaintiff's credibility. If the ALJ does not articulate a reason for rejecting credibility, the Court cannot ascertain whether his finding is supported by substantial evidence. The ALJ can only reject credibility for a legally sufficient reason. For example, he cannot do so based on his visual observations at the hearing. *Wilson v. Heckler*, 734 F.2d 513 (11th Cir.1984) ("sit and squirm jurisprudence"). Although the Secretary is not bound by the plaintiff's testimony, she must have a legal reason to discount it. Absent such a reason, the cause must be remanded.

## RECOMMENDATION

Based upon the foregoing, the undersigned RECOMMENDS that the cause be REMANDED, and

1. The Secretary shall determine the effect of the plaintiff's scoliosis on her ability to perform basic work related activities (i.e., walking, standing, sitting, lifting, pushing, pulling, reaching, carrying and handling) (see 20 C.F.R. § 404.1521(b) (1984));

2. If the Secretary rejects the credibility of any portion of the plaintiff's testimony, the Secretary shall put forth legally, sufficient reasons for doing so;

3. The Secretary shall continue beyond step two of the sequential process (20 C.F.R. § 404.1520 *et seq* (1984));

4. Upon remand, the Secretary shall develop the record further and take additional medical testimony so as to ascertain the basis for the opinions of both the treating physician and consultative physician, and articulate reasons for the acceptance or rejection of such medical evidence. See *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir.1981).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties may serve and file written objections to this report with the Honorable

Alcee L. Hastings, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. See *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982).