765 F.2d 146
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MARK PIPPINS, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-1473
 United States Court of Appeals, Sixth Circuit.
 5/8/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: MERRITT and CONTIE, Circuit Judges; KINNEARY, District Judge.*
 MERRITT, Circuit Judge.
 
 
 1
 Claimant Mark Pippins alleges disability based on hypertension, short leg syndrome, degenerative joint disease and arthritis, and chronic lumbosacral myositis. His work history includes farm labor, foundry labor, construction, and trash collecting, all of which required lifting in excess of 50-100 pounds. Claimant testified that he has not worked since April 30, 1981; at the time of the hearing Pippins was 59 years old.
 
 
 2
 Pippins first applied for disability benefits on April 30, 1981, alleging disability onset date of March 10, 1981, due to high blood pressure and numbness in his extremities. His application was denied initially and upon reconsideration, and he did not appeal from that denial. His present disability application was filed on February 25, 1982; he again alleged disability onset date of March 10, 1981. This application was also denied initially and upon reconsideration, at which time claimant requested a hearing.
 
 
 3
 At the hearing, the ALJ determined that Pippins did not have a severe impairment significantly limiting his physical or mental capacity to perform basic work activity. The ALJ therefore denied disability at the second stage of the sequential process by deciding that claimant's impairment was not 'severe' within the meaning of the statute.[1]
 
 
 4
 The ALJ determined that '[i]n this case there is a paucity of clinical or diagnostic evidence which would support claimant's symptomatology' and that '[c]laimant's subjective complaints appear far out of proportion to the objective medical evidence.' JA at 10. The ALJ noted that Pippins' hypertension was controlled, that he had worked successfully for years with his congenital short leg syndrome, and that no diagnosed medical condition created any severe impairment for claimant. The ALJ relied on the report of the Secretary's consultative doctor, who had concluded that claimant was not disabled. The ALJ discounted the conclusions of two other doctors, one of whom was claimant's treating physician, and the other a consultative physician, who had concluded that claimant was disabled.
 
 
 5
 On appeal from the Secretary's denial, the Magistrate who initially heard the case recommended reversing the Secretary and stated that the ALJ's decision was not supported by substantial evidence. The Magistrate noted that the reports of a treating doctor are to be given greater weight than those of the Secretary's consulting doctors. The District Court did not accept the Magistrate's recommendation, however, and the court affirmed the Secretary's denial.
 
 
 6
 On appeal before this Court, Pippins argues that he does have severe impairment, which the findings and conclusions of his treating doctor have documented. He maintains that, had the Secretary employed the entire 5-step evaluation sequence, Pippins could prove disability using the criteria of the grid. He points to what he characterizes as the Secretary's prevasive current practice of short-cutting the evaluation sequence by readily finding disability at the 'severe impairment' stage of the process.
 
 
 7
 The crux of the Secretary's argument is that objective medical evidence fails to support Pippins' claim that he suffers from an impairment severe enough to significantly limit his work activities. The Secretary argues that this lack of objective medical data, coupled with claimant's having worked for some time subsequent to his alleged disability onset date of March 10, 1981, compels the conclusion that Pippins did not have a severe impairment as of his asserted onset date.
 
 
 8
 Although this determination is a close one, we find that the Secretary's decision is supported by substantial evidence. We agree with claimant's argument that the second step 'severe impairment' stage of the evaluation process is correctly perceived as a minimal, threshold level of impairment. See, e.g., Brady v. Heckler, 724 F.2d 914 (9th Cir. 1984). But the lack of objective medical findings supporting a significant physical or mental limitation, as well as the claimant's continued work activities past his claimed onset date, support the Secretary's finding that Pippins did not have a severe impairment at the relevant time for consideration in this case.
 
 
 9
 It is certainly possible that the degenerative nature of claimant's physical problems have now risen to a level severe enough to significantly limit his basic work activities. The present decision is without prejudice to the claimant's ability to file for disability benefits on the basis of a more recent or current disability.
 
 
 10
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Joseph P. Kinneary, United States District Court Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The regulation defining severe impairment is 20 C.F.R. Sec. 404.1521(a)(b) which provides:
 (a) Non-severe impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.
 (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include:
 (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
 (2) Capacities for seeing, hearing and speaking;
 (3) Understanding, carrying out, and remembering simple instructions;
 (4) Use of judgment;
 (5) Responding appropriately to supervision, co-workers, and usual work situations; and
 (6) Dealing with changes in a routine work setting.