798 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roy FARMER, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-5619.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1986.
 
 Before KEITH, NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Roy Farmer, appeals from the order of the District Court, affirming the Secretary of Health and Human Services' final decision to deny his application for disability insurance benefits and Supplemental security income. The DistriCt Court adopted in its order the Magistrate's recommendation to affirm the Secretary's denial of benefits. Because we find that the Secretary's decision is supported by substantial evidence, we affirm.
 
 
 2
 I .
 
 
 3
 Farmer, a fifty-year-old laborer with a seventh grade education, claims he was disabled as a result of an April 1978 mining accident which allegedly causes him to suffer from "extreme weakness," nervousness," "semi-consciousness," "headaches," "numbness down [his] right arm and leg," and "bad dreams." Following the accident, he left his mining job to work with a previous employer, Harlan Ford Motor Company, as a mechanic and "parts man." Farmer left his job with Harlan Ford in November 1980 because he had "to go to the doctor a lot" and therefore "was missing a lot of work." There is no evidence that Harlan Ford solicited Farmer's resignation.
 
 
 4
 Farmer subsequently filed a disability claim with the Social Security Administration ("SSA"). The SSA denied his claim, both initially and after reconsideration. Farmer appealed his denial to an Administrative Law Judge ("ALJ") who conducted a hearing on October 19, 1981. The ALJ considered the claims and found that Farmer was not disabled. When the Appeals Council denied review, the ALJ's decision became the final decision of the Secretary of Health and Human Services ("the Secretary"). Farmer then sought judicial relief in the District Court. The court referred the matter to a Magistrate, who recommended that the Secretary's decision be affirmed. The District Court adopted the Magistrate's recommendation, and affirmed. Farmer now appeals from that decision.
 
 
 5
 Farmer has been unemployed since leaving his position with Harlan Ford; he plays cards three days week at the Comprehensive Care Center and spends the remainder of his time at home. As of September 22, 1981, he was taking a number of prescription drugs. Farmer stated at the ALJ hearing that these drugs made him lethargic.
 
 
 6
 The medical evidence in the record concerning Farmer's condition is conflicting. A number of examinations produced medical opinions of partial or total disability, while other examinations found no evidence of significant medical problems. In Farmer's favor, Dr. Howard examined Farmer on February 3, 1981, and diagnosed him as having symptoms typical of myasthenia gravis with muscular atrophy and a "nervous problem" caused by fatigue and generalized weakness. He opined that Farmer was unable to work. Dr. Backus examined Farmer on March 20, 1981 and observed:
 
 
 7
 Today, this meticulously clean, middle-aged male, was oriented to time, person and place, but did show considerable difficulty with memory in many areas. He does not show signs of a thought disorder. He is showing signs of psychomotor retardation and depression, generally. ... He has good judgement and insight.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 It is my impression that Mr. Farmer is totally and permanently disabled. ... He is not capable of executing sequential instruction, is able to perform only simple mathematics and cannot meet the standards necessary for usual, expected production.
 
 
 11
 Dr. Toppen conducted on April 15, 1980 a neurological examination that did not reveal any "gross abnormalities with the exception that tandem walking shows some unsteadiness." Dr. Toppen found Farmer to be 50 per cent functionally impaired, and concluded that Farmer suffered from permanent post-concussion organic brain syndrome. On April 18, 1980, Dr. Hunter diagnosed post-traumatic syndrome and a musculoligamentous sprain of the cervical spine. Based in large part on symptoms connected to Farmer's inability to converge his eyes, Dr. Hunter concluded that Farmer was permanently -15 to 20 per cent disabled., Dr. Matheny conducted a neurological examination on December 26, 1980, and found:
 
 
 12
 1) Post laceration of the left side of the skull, well healed with sensory loss; 2) Eye lesions--probably due to active histoplasmosis; 3) Traumatic neurosis; 4) and Cervical arthritis.
 
 
 13
 Dr. Chutknow conducted another neurological examination of Farmer on December 30, 1980 and concluded that Farmer was suffering from a generalized anxiety disorder and that Farmer had a "40 per cent permanent impairment."
 
 
 14
 On the other hand, Dr. Stoltzfus found "no acute problem." In addition, as noted above, Dr. Toppen found no gross neurological abnormalties except for some unsteadiness. Dr. Hunter found a normal EEG and brain scan, and noted that an associate, Dr. Berger, found in September 1980 that Farmer could converge his eyes, indicating an improved condition since Dr. Hunter's April examination. Dr. Hunter's recitation of restrictions emphasized very active work: "avoid climbing, for example; working on a ladder; working at heights; working around moving machinery ...it He indicated that Farmer could work in a "controlled position," such as the job he had held at Harlan Ford.
 
 
 15
 Finally, on June 9, 1981, Dr. Boal, at the government's request, conducted yet another neurological examination of Farmer. Dr. Boal stated that Farmer had experienced an hysterical conversion reaction and that Farmer was a "possible malingerer." Dr. Boal also administered an EEG, the results of which he found to be normal, and reviewed the reports of Drs. Howard and Backus. Dr. Boal concluded that:
 
 
 16
 At the present time I really do not find any abnormality that would functionally limit this patient. His spells that he describes as seizures are totally bizarre and are anything but true seizures. These symptoms fall into the category of a conversion reaction with numerous somatic symptoms with hardly any underlying abnormality on physical exam. I do not find any evidence at the present time to suggest he suffers either from myasthenia gravis or that he has atrophy of the muscles of the shoulder gridle and respiration.
 
 
 17
 The ALJ's opinion, which became the final decision of the Secretary, relates in detail this medical evidence. Based on this evidence, the ALJ found that Farmer's impairments, including subjective symptoms such as pain, had not reached a level of severity "as to significantly interfere with the ability to perform basic work-related functons." The ALJ concluded that:
 
 
 18
 [C]laimant's medical condition is not found to be "severe". The more persuasive evidence reflects no significant functional limitations or restrictions on the basis of medial impairments. Consequently, the claimant's application is denied upon claimant's failure to establish medical impairments of 'such severity as to significantly preclude, limit or restrict basic work-related functions.
 
 
 19
 II .
 
 
 20
 The Social Security Administration uses a five-step sequential process to evaluate a disability claim. 20 C.F.R. S416.920. The second step of this process requires that the Secretary determine whether the Claimant has a severe impairment, defined in the negative as follows:
 
 
 21
 "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."
 
 
 22
 20 C.F.R. S416.921. These "basic work activities" include standing and reaching; hearing and understanding instructions; using judgment; and responding to supervision, co-workers, and usual work situations. Id. If the ability to do these "basic work activities" is not severely impaired, the Claimant is not disabled.
 
 
 23
 We recently upheld this severity analysis in Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985) and Salmi v. Secretary of Health and Human Services I 774 F.2d 685 (6th Cir. 1985). We noted in Farris that an impairment is non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." 773 F.2d at 90, quoting Heckler, 724 F.2d 914, 920 (1lth Cir. 1984). Similarly, in Salmi we stated that "an impairment qualifies as non-severe only if, regardless of a Claimant's age, education, or work experience, the impairment would not affect, the Claimant's ability to work." 774 F.2d at 692.
 
 
 24
 Under this standard, the question in the present case is whether the finding that Farmer's impairments were non-severe is supported by substantial evidence. Such a finding "if supported by substantial evidence, shall be conclusive...." 42 U.S.C. S405(g); see also Farris v. Secretary of Health and Human Services, 773 F.2d at 90; Salmi v. Secretary of Health and Human Services, 774 F.2d at 692. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.s. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB 305 U.S. 197, 229 (1938).
 
 
 25
 The evidence in this case consists of the conflicting medical opinions of several medical experts; the Secretary 5, was entitled to resolve this conflict. Although there is much evidence to the contrary, the reports of Drs. Boal, Hunter and Matheny, together With the ALJ's observation of the demeanor of Farmer, provide Substantial evidence that Farmer's impairment would not affect his ability to perform basic work activities. Under Farris and Saimi this is sufficient to support a denial of benefits for failure to prove a severe impairment. We, therefore, conclude that the Secretary's decision to deny benefits is supported by substantial evidence,
 
 
 26
 Farmer asserts that the ALJ failed to give appropriate weight to the testimony of the treating physiCian, Dr. Howard. Generally, a treating physician's opinion must be given greater weight than the opinion of the government's consulting physician, Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); however, this is true only if the treating physician's opinion is based on sufficient medical data. 20 C.F.R. 3404.1529; see also Kirk v. Secretary of Health and Human Service s,667 F.2d 524, 528 (6th Cir, 1981), cert. denied, 461 U.S. 957 (1983). Here, the ALJ noted that Dr. Howard's opinions did not contain "detailed physical examination notes or clinical findings" or "laboratory test results," and found that "the conclusions of Dr. Howard and other physicians are o . . not sustainable on the basis of the objective medical evidence of record specific reference being had to the highly credible report of Dr. Boal." Therefore, we conclude that Dr. Howard's opinions were accorded appropriate weight.
 
 
 27
 Farmer also contends that the ALJ failed to evaluate his subjective complaints of pain. We find this contention to be without merit. The ALJ observed Farmer's demeanor, as well as hearing all the medical evidence presented at the hearing. His opinion states the following:
 
 
 28
 Assertions and testimony as to claimants functional limitations because of subjective complaints are simply inconsistent with the degree of severity of medical impairments as revealed by the more persuasive of the me, u ical findings and judgments and claimant's demeanor and mood, as carefully observed by the Administrative Law Judge.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 The claimant, at the hearing, exhibited no significant observable signs which could be related to subjective symptoms, including pain, which are frequent or constant, unremitting or unresponsive to treatment. At the hearing, the claimant did not appear to be preoccupied with personal discomfort and appeared alert. Claimant's physical manifestations simply were not consistent with asserted degree of subjective symptoms.
 
 
 32
 Therefore, we conclude that the ALJ properly evaluated Farmer's subjective complaints of pain.
 
 
 33
 The decision of the District Court is AFFIRMED.