815 F.2d 705
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert E. PARKS, Jr., Plaintiff-appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3175.
 United States Court of Appeals, Sixth Circuit.
 March 10, 1987.
 
 Before JONES and GUY, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Parks, appeals from the denial of social security disability benefits. This is a chronic low back pain case and the principal contention on appeal is that the administrative law judge (ALJ) and the district court did not give sufficient weight to the treating physician's opinion that Parks was disabled. Upon review we conclude that the ALJ's determination was not supported by substantial evidence and remand for further proceedings, although for reasons different than those argued by Parks.
 
 I.
 
 2
 Parks, at the time of the hearing, was a 44 year old, overweight male with a 12th grade education.[1] Parks last worked on April 26, 1982, as a clerical inspector.[2] On that date he fell down a flight of stairs and exacerbated an existing back problem which was the result of a 1978 industrial accident. Prior to the fall, Parks had pain and muscle spasm in his back but worked regularly. He claims the fall intensified the pain and increased the frequency of the spasms. Prior to this fall, Parks had fallen five or six other times in connection with his work with the local volunteer fire department.
 
 
 3
 Just prior to his 1982 fall, Parks had been hospitalized from February 10, 1982, until March 11, 1982, as a result of low back syndrome. While hospitalized his longtime treating physician, Dr. Doyle, referred him to an orthopedic specialist, Dr. Tapogna, who examined and observed Parks during his extended hospital stay. Dr. Tapogna had an EMG performed which was negative, as were x-rays. The specialist's discharge summary indicated low back syndrome. The specialist found it "difficult to believe that he is having this much pain, as he describes...." (App. 88). He recommended bed rest and conservative treatment for the back. It was also noted that much of Parks' problems stemmed from his being grossly overweight and weight reduction was of paramount importance.
 
 
 4
 After the April, 1982, fall, Parks was again admitted to the same hospital. He stayed there from April 26, 1982, until May 14, 1982. At discharge he was "up and walking ... [and] was improving considerably," according to his treating physician, Dr. Doyle. (App. 95). The discharge diagnosis was identical to that of his previous hospital stay.
 
 
 5
 On June 22, 1982, Parks fell down the cellar stairs while carrying laundry. He was admitted again to Community Hospital where he stayed from June 22, 1982, until July 10, 1982. He was given the same treatment as before and discharged with the same discharge diagnosis as earlier.
 
 
 6
 On November 7, 1982, Parks tripped over a step and was again admitted to the hospital for a two-week period. Again his hospital treatment was the same as was his discharge diagnosis. He was released on November 20, 1982, to be followed as an out-patient and to receive physiotherapy.
 
 
 7
 Parks was also examined by Dr. Maria Ryan on January 10, 1983, for the Industrial Commission of Ohio in connection with his workers' compensation claims. Her observations and diagnosis paralleled those of the other doctors and she found him temporarily disabled for a period of six to nine months. On January 21, 1982, one year earlier, Parks had been examined by Dr. Fazio in connection with an insurance claim. Dr. Fazio's findings were consistent with the other doctors and he also felt that Parks was "exaggerating his symptoms." (App. 122). He recommended a psychiatric consultation to determine if a conversion reaction was present.
 
 
 8
 The only other information the ALJ had before him was the testimony of Parks himself. Parks' own description of his condition and activities was generally consistent with what one would expect of a grossly overweight middle aged man with lower back problems and not much income. He takes care of himself and his apartment with help from a son; he drives occasionally and does some limited grocery shopping. He is separated from his wife and has little to do all day. He averages seven hours of sleep a night and complains of being uncomfortable most of the time. He spends a significant amount of time on a daily basis in traction.
 
 
 9
 There can be little doubt that the combination of Parks' back problems, his obesity, and his recent propensity to be trauma prone do not make him readily employable as a practical matter. His history of back problems and present drawing of workers' compensation would be enough to scare most employers off. But that is not the test insofar as being declared eligible for social security benefits is concerned. The question, and it is the only question before a reviewing court, is whether there is substantial evidence to support the Secretary's conclusion that the claimant is not disabled from any substantial employment that exists in the national economy.
 
 
 10
 It may well be that, despite his problems, Parks can still perform some work that exists in the national economy, but we are compelled to reverse and remand because the ALJ's handling of this case does not square with this court's decisions in Farris v. Secretary of Health & Human Services, 773 F.2d 85 (6th Cir.1985), and Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir.1985).
 
 
 11
 Under the sequential disability evaluation procedure promulgated by the Secretary and codified at 20 C.F.R. Sec. 416.920, the statutory test for disability is broken down into a five-step inquiry. An initial determination is made as to whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is found "not disabled." Second, the ALJ must determine whether the claimant has a severe impairment or impairments. A severe impairment is defined in the negative; 20 C.F.R. Sec. 416.921 states that a nonsevere impairment is one that "does not significantly limit [the claimant's] physical or mental abilities to do basic work activities." If the claimant does not have a severe impairment, he is found "not disabled." If a severe impairment is found, then the ALJ compares the claimant's impairment against those listed in Appendix 1, 20 C.F.R. Subpart P, to see if, on the medical evidence alone, the claimant can be found to be disabled. If the claimant does not qualify as disabled solely on the basis of the listings, then residual functional capacity is determined; that is, the level of work the claimant is able to perform (sedentary, light or medium). If the claimant is found unable to return to past work, then his age, education, and work experience are considered along with his residual functional capacity to determine whether there is other work in the national economy which he can perform. See 20 C.F.R. Sec. 404.1520.
 
 
 12
 In this case the ALJ went no further than the second step of the sequential evaluation and found the claimant not to have a severe impairment. When this decision was made in August of 1983, the ALJ, of course, did not have the benefit of this court's subsequent decisions in Farris and Salmi. In Farris and Salmi, other panels of this court adopted the rationale of the Eleventh Circuit's decision in Brady v. Heckler, 724 F.2d 914 (11th Cir.1984). Under this test an impairment can only be found not severe and the application rejected at the second stage of the sequential evaluation if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 724 F.2d at 920. In short, this circuit now views the severity test of the second sequential step as only an "administrative convenience" designed to screen out totally groundless claims. 773 F.2d at 85 n. 1.
 
 
 13
 It is clear that this plaintiff, with his 18 hospitalizations between 1978 and 1982, his history of chronic low back syndrome, and pain, exacerbated by numerous traumatic episodes, cannot be weeded out of the pack at the second step of the sequential analysis. Farris and Salmi dictate that we REMAND this case to the ALJ for the completion of the sequential analysis.
 
 
 
 [1]
 At the time of the injury which precipated this claim, Parks weighed 370 pounds. In 1978, he weighed 465 pounds
 
 
 [2]
 Parks described his job as that of a male secretary in charge of all the paperwork for 120 inspectors. (App. 26). He testified that he walked up to ten miles a day in connection with his work duties. (App. 42)