[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10712
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02312-TGW


JARED B. ADAMS,

                                                          Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                          Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 24, 2013)

Before TJOFLAT, PRYOR, and EDMONDSON , Circuit Judges.

PER CURIAM:

Jared Adams appeals the district court's order affirming the Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance benefits. Adams challenges the administrative law judge's ("ALJ") failure to address the vocational expert's testimony that two unexcused absences per month, in conjunction with certain other limitations, would render Adams unable to work, as well as the ALJ's implicit finding that Adams would not have two unexcused absences per month. Adams also argues that the ALJ did not properly weigh the 80% disability rating that Adams received from the Department of Veterans Affairs ("VA"). We affirm.

## I.

We review the Commissioner's final decision "to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

To be eligible for disability insurance benefits, a claimant must show that he became disabled on or before the date his disability insured status expired. *Id.*; *see*

2

*also* 42 U.S.C. § 423(a)(1)(A).  The claimant bears the burden of proving that he is disabled.  20 C.F.R. § 416.912; *Moore*, 405 F.3d at 1211.

Adams had to show that he became disabled on or before December 31, 2007, the date that his disability insured status expired.  *See Moore*, 405 F.3d at 1211.  In his administrative proceedings, Adams submitted medical records from a VA hospital and testified at a hearing, describing his back and neck pain, difficulty walking, carpal tunnel syndrome in his hands, sleep apnea, migraines, and emotional problems relating to his depressive disorder.  The ALJ asked a vocational expert if a hypothetical person with certain limitations could perform Adams's past work, to which the vocational expert responded that he could.  The ALJ then asked the vocational expert if the same hypothetical person would be able to work with the additional limitation of two unexcused absences per month, to which the vocational expert responded in the negative.

In determining that Adams was not disabled, the ALJ concluded that Adams had several severe impairments but that he was still able to perform his past relevant work or that other work existed in significant numbers in the national economy.  The ALJ also determined that Adams's sleep apnea, migraines, dysthymic and personality disorders, and depressive disorder were non-severe because they did not significantly limit his physical or mental ability to do basic work-related activities.  In making that determination, the ALJ discussed both the

3

medical evidence on record and Adams's testimony, concluding that the medical evidence showed that (1) Adams's migraines were well-controlled and Adams had reported improvement during the relevant time based on his course of treatment, which included Botox injections and Fioricet tabs and (2) Adams was not credible to the extent that his testimony describing his pain was inconsistent with the ALJ's functional capacity assessment. Thus, the ALJ implicitly determined that Adams would not have two unexcused absences per month.

Substantial evidence supported the ALJ's implicit finding. For the objective medical evidence, Adams's medical records showed that (1) in June 2007, he reported that he was "happy with the [B]otox treatments" for his migraines and (2) in November 2007, he complained of back pain and difficulty bending at the waist but told his physician that he was doing well and that the Fioricet was "working well for him." His medical records from 2008 and 2009 showed that he continued to complain of pain and frequent migraines but that he also continued to report improvement based on the Botox injections and Fioricet tabs. Thus, for the objective medical evidence, relevant evidence exists that "a reasonable person would accept as adequate to support [the] conclusion" that Adams's reported medical conditions would not cause him to suffer two unexcused absences per month. *See Moore*, 405 F.3d at 1211.

The ALJ's determination on Adams's credibility was also supported by substantial evidence and by the ALJ articulated specific reasons for that finding. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  The ALJ discussed Adams's testimony in detail and examined the medical evidence on record from March 2007 through July 2009, including the reports from Adams's physicians stating that Adams was doing well on Botox injections and that his back and neck pain was better with physical therapy and pain medications.  Thus, the ALJ articulated specific reasons for his credibility determination, and the finding was supported by substantial evidence.  *See Marbury*, 957 F.2d at 839; *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Moreover, the ALJ's discussion shows that he considered Adams's medical condition as a whole.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Because the ALJ's implicit determination that Adams had not shown that he would have two unexcused absences per month was supported by substantial evidence, Adams's remaining argument—that the ALJ erred by failing to consider the vocational expert's testimony that a hypothetical person with Adams's limitations, who would have two unexcused absences per month, would not be able to work—is also unavailing.  An ALJ may accord less weight to the vocational expert's response to a hypothetical that is premised on the claimant's subjective testimony.  *Wilkinson v. Schweiker,* 640 F.2d 743, 745 (5th Cir. Unit B March

1981).  Because the ALJ found that Adams's testimony supporting the hypothetical absences was not credible and because substantial evidence supports that determination, the ALJ did not err in disregarding the vocational expert's testimony that two absences per month would render Adams unable to work.  *See id.*

## II.

The ALJ did not misapply the law when he discounted the VA's 80% disability rating.  Although the ALJ should give the VA's disability rating  "great weight," the rating is not binding on the Commissioner.  *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984).  Adams contends that the ALJ must state how much weight he assigned to the VA determination, but this contention is meritless. Adams does not cite any decision holding that the ALJ must state the precise amount of weight he gives the VA's disability determination.

Adams also argues that the ALJ gave little or no consideration to the VA's disability rating: the ALJ commented that VA lay staff, rather than physicians, make the VA disability ratings and that the VA is flexible and accommodating to veterans.  To the contrary, although the ALJ did not expressly state that he gave "great weight" to the VA's rating, the record shows that he expressly considered

and closely scrutinized it.  *See Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A March 1981).  The ALJ noted that the VA had given Adams a 30% disability rating for depressive disorder; yet Adams had not been hospitalized or received ongoing treatment or intervention.  The ALJ further gave "great weight" to a psychiatrist's medical opinion that Adams's mental status was "within normal limits" and his psychiatric condition was "under control."  Also, the ALJ gave "significant weight" to a doctor's opinion, expressed in 2008 and 2009, that Adams did not have a severe mental impairment.  About the VA's 50% rating for Adams's migraines, the ALJ discussed Adams's repeated statements to his physician that his headaches were controlled with medication and Botox injections.  Thus, while the ALJ did not specify how much weight he gave the VA disability determination, he seriously considered it in making his own determination that Adams was not disabled.  *See Rodriguez*, 640 F.2d at 686; *Brady*, 724 F.2d at 921.  Accordingly, the ALJ did not err by failing to give the VA disability determination "great weight."

**AFFIRMED.**