815 F.2d 75
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Launa S. BERRY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3491.
 United States Court of Appeals, Sixth Circuit.
 Feb. 19, 1987.
 
 Before MERRITT and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Launa Berry appeals from the order of the district court affirming the final decision of the Secretary of Health and Human Services denying her application for disability insurance benefits. Because we conclude that the Secretary's finding that plaintiff does not suffer from a severe impairment is not supported by substantial evidence, we reverse and remand for continuation of the sequential evaluation process.
 
 I.
 
 2
 Claimant alleges that she became disabled on October 30, 1980, due to a back condition, nerves, breast and uterine cancer. Because claimant's cancer problems did not begin until after the expiration of her insured status on March 31, 1982, they may not be considered in the disability determination.
 
 
 3
 Claimant's back injury occurred in October, 1980, while she was lifting a heavy patient at the nursing home where she was employed. She was admitted to St. Petersburg General Hospital on November 7, 1980, complaining of "low back pain with sciatic radiation down the right leg." Joint Appendix at 152. Dr. George Page indicated that she had suffered severe pain since the incident at the nursing home. Id. at 153. In the discharge summary he prepared on November 18, 1980, Dr. Page indicated that claimant "made a gradual recovery and is relatively asymptomatic except for some slight sciatic tenderness on discharge." Id. at 152.
 
 
 4
 On January 3, 1981, claimant's lumbar region was X-rayed. The results indicated "minor osteoarthritic lipping at all lumbar levels, no acute bony pathology." Joint Appendix at 179.
 
 
 5
 Claimant was hospitalized in April, 1981, complaining of chest and back pain. Dr. Michael Spuza indicated that she suffered from severe hypertension. Deep tendon reflexes were normal, as were nerve conduction velocity studies and an EMG. Lumbar myelogram and CT scan were normal. Dr. Spuza noted minor osteoarthritic lipping in the lumbar region, but no acute bony pathology. Joint Appendix at 164. He noted that claimant's mental condition was "conscious" and "intense." He stated that her problems included "severe low back pain ... degenerative arthritis of the knee, hypertension and hypertensive heart disease, chronic interstitial disease, both lungs...." Joint Appendix at 167.
 
 
 6
 On April 2, 1981, a neurological examination was performed by Dr. Angelo Alves. He indicated that claimant was "alert, coherent, oriented in three spheres with good power of calculation, good attention and concentration spans." Joint Appendix at 169. Right straight leg raising was positive at 70-80 degrees. Flexion of the lumbosacral axis was painful forward at 20 degrees; extension backward was painful almost immediately. Dr. Alves indicated that claimant was suffering from degenerative disc disease.
 
 
 7
 Consultation regarding claimant's circulation in her legs indicated the absence of vascular insufficiency. Joint Appendix at 172. Chest X-rays were negative, although Dr. Steven Greenberg indicated that "some interstitial disease is present" and that it could be "acute or chronic in nature." Joint Appendix at 178.
 
 
 8
 Claimant was again hospitalized in November 1981, complaining of chest pain which was subsequently diagnosed as herpes zoster (shingles). Dr. Spuza noted that claimant "had something of a problem with her memory." Joint Appendix at 107. Once again, he noted that she suffered from low back pain and degenerative arthritis of the lumbosacral spine.
 
 
 9
 Claimant was hospitalized in December 1981. Dr. Spuza indicated that, upon discharge, claimant suffered from neuralgia, controlled hypertension, hyperinflated lungs, incipient emphysema, and back pain. Joint Appendix at 125.
 
 
 10
 In January 1983, claimant's left breast was removed. No manifestation of this problem existed before the expiration of her insured status.
 
 
 11
 A radiology report dated March 30, 1983, indicates minor degenerative changes in the lumbosacral spine. In a report dated June 29, 1983, Dr. Boes, claimant's treating physician, indicated that she was suffering from degenerative arthritis and that she should "avoid heavy lifting, bending, stooping or hard work." Joint Appendix at 146.
 
 
 12
 On July 6, 1983, claimant was examined by Dr. Michael Sperl at the request of the Ohio Bureau of Disability determination. He indicated that she was "alert, oriented, competent and cooperative," and that her back problem "is primarily related to mechanical factors." Joint Appendix at 149. On August 16, 1983, Dr. Boes again suggested limitations on claimant's exertional activities.
 
 
 13
 Finally, on December 13, 1983, claimant was examined by a psychiatrist, Dr. Joseph Mann, who indicated that claimant was suffering from "major depression, chronic, recurrent," which probably began in 1978, and that she was emotionally disturbed. Her lack of training and work experience contributed to his diagnosis. Joint Appendix at 197.
 
 
 14
 Claimant was the only witness who testified at her administrative hearing. She claimed that she was unable to work because of her back and leg pain, depression, and inability to concentrate. She does no housework, grocery shopping or driving. She plays the piano two or three times a day for an hour at a time. She also reads and sews. Claimant attends church once a week.
 
 
 15
 Claimant filed her current application for benefits on April 21, 1983, alleging disability beginning October 30, 1980.[1] The claim was denied initially and upon reconsideration.
 
 
 16
 Claimant was granted a de novo hearing before an Administrative Law Judge on January 23, 1984. The ALJ reviewed all medical evidence, including the new evidence presented by claimant in conjunction with her request for reopening the record under 20 C.F.R. Secs. 404.988 and 404.989. On the basis of this evidence, the ALJ concluded that the claimant did not suffer from a severe impairment at any time prior to March 31, 1982. Consequently, he concluded that she was not disabled. The Appeals Council refused to review this determination by letter dated August 2, 1984.
 
 
 17
 Claimant subsequently filed the present action. The magistrate granted the Secretary's motion for summary judgment on the ground that the ALJ's determination was application for benefits on February 25, 1982, alleging disability beginning December 1981. Her application was based on substantial evidence[2] In this appeal, three issues are presented for consideration:
 
 
 18
 (1) whether the ALJ erred in concluding that claimant's back problems do not rise to the level of a severe impairment;
 
 
 19
 (2) whether the ALJ erred in concluding that claimant's mental condition does not rise to the level of a severe impairment; and
 
 
 20
 (3) whether claimant's application should be reconsidered by the Secretary in light of the new mental impairment listings under 20 C.F.R. 404, Subpt. P, Appendix 1.
 
 II.
 A.
 
 21
 The Secretary's determination that claimant does not suffer from a severe impairment must be affirmed if supported by substantial evidence. Under 42 U.S.C. Sec. 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantiality of the evidence must be based upon the record taken as a whole ... [and] 'must take into account whatever in the record fairly detracts from its weight.' " Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984) (quoting Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978)).
 
 
 22
 At the time his decision was rendered, the ALJ did not have the benefit of our decisions in Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir. 1985), and Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). These decisions indicate that a claimant's burden at the second step of the sequential evaluation process is minimal:
 
 
 23
 impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." ... An impairment qualifies as non-severe only if the impairment would not affect a claimant's ability to work regardless whether the claimant was sixty-years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary. We hold that an impairment qualifies as nonsevere only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work.
 
 
 24
 Salmi, 774 F.2d at 691-92 (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). See Farris, 773 F.2d at 89-90.[3]
 
 
 25
 In the present case, the uncontroverted medical evidence establishes that claimant suffers from osteoarthritis of the spine. Dr. Alves indicated that claimant's range of motion was limited; right straight leg raising was positive at 70-80 degrees; flexion of the lumbosacral axis was painful forward at 20 degrees, and extension backward was painful almost immediately. The uncontroverted medical evidence also indicates that claimant's condition causes her some pain. We conclude that claimant's impairment does not constitute a " 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " Farris, 773 F.2d at 90 (quoting Brady, 724 F.2d at 920). Because the Secretary's conclusion that claimant's back impairment is not severe is not supported by substantial evidence, the case must be remanded to the Secretary for continuation of the sequential evaluation process.
 
 B.
 
 26
 We are not persuaded, however, that claimant's alleged mental impairment rises to the level of a severe impairment. Claimant's medical records indicate that she may have suffered from some type of emotional problem before the expiration of her insured status. On November 15, 1981, Dr. Spuza indicated that claimant exhibited signs of "[s]omehow depressive neurosis and loss of memory on and off." Joint Appendix at 107. Yet these observations appear to be only passing references on claimant's medical chart during a period of hospitalization. There are no objective findings supporting this "diagnosis."
 
 
 27
 Although Dr. Spuza appears to have been claimant's treating physician at the time of her November 1981 hospitalization, his opinion is entitled to substantial deference only when supported by appropriate medical criteria. See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Other than this passing reference during claimant's November, 1981, hospitalization, there is no reference to any sort of psychological impairment. Moreover, there is no evidence indicating that Dr. Spuza followed up on his impression by referring claimant for any type of evaluation.
 
 
 28
 Claimant seeks to buttress her argument regarding the existence and onset of an emotional impairment by relying on the diagnosis of Dr. Mann, a psychiatrist who saw her one time, at the request of her attorney, in December 1983. Based on this single interview, Dr. Mann concluded that claimant suffered "from a chronic major depression, which in all probability occurred in 1978 or even earlier." Joint Appendix at 197.
 
 
 29
 The ALJ discredited Dr. Mann's report on the ground that Dr. Mann "provides no evidence to support his conjecture, or upon which to determine the level of severity as of March 31, 1982." Joint Appendix at 14. Moreover, other physicians examining claimant during the relevant time period did not indicate that she suffered from an emotional impairment. Dr. Alves, the neurologist who examined claimant during her April 1981 hospitalization indicated that she was "alert, coherent, oriented in three spheres with good power of calculation, good attention and concentration spans." Joint Appendix at 169. Dr. Seravinin, who evaluated her alleged vascular deficiencies in April 1981, noted the absence of "acute distress." Joint Appendix at 172. Moreover, claimant's treating physician, Dr. Boes, indicated that she suffered from no emotional problem in 1983. He offered this conclusion only seven months before Dr. Mann stated that her depression began in 1978 and rendered her totally disabled.
 
 
 30
 Thus, the ALJ was justified in discrediting the opinion of Dr. Mann. The lack of credible evidence supporting claimant's assertion that she suffered from a severe emotional impairment before March 1982 substantiates the ALJ's conclusion that such an impairment did not exist.[4]
 
 III.
 
 31
 Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED to the Secretary for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The current application for benefits is the most recent in a series of four. Claimant filed her first application on November 25, 1980. The application was denied, and no appeal was taken. The second application, j filed March 30, 1981, alleged disability beginning October 23, 1980. This application was denied initially and upon reconsideration. On December 10, 1981, an ALJ affirmed the denial of benefits. On February 16, 1982, the Appeals Council affirmed this decision. Claimant filed her third administratively denied, and no appeal was taken. Although the Secretary contends that the doctrine of administrative res judicata precludes us from considering whether claimant was disabled prior to March 19, 1982 (the date of the most recent denial), we conclude that the doctrine should not be applied because the ALJ apparently granted claimant's request to reopen the record of her second disability determination. See 20 C.F.R. Secs. 404.988 and 404.989. See also Farris v. Secretary of Health and Human Services, 773 F.2d 85, 91 (6th Cir. 1985) (Wellford, J., dissenting) (indicating that administrative res judicata is not inflexible, and that application of the doctrine is inappropriate when standards for reopening are satisfied); Gaston v. Richardson, 451 F.2d 461, 465-66 (6th Cir. 1971) (use of procedure for reopening the record allows claimant to challenge an otherwise final decision of the Secretary)
 
 
 [2]
 Because the parties consented to the entry of a final judgment by the magistrate, his decision was not reviewed by the district court
 
 
 [3]
 In concluding that claimant was not suffering from a musculoskeletal impairment, the ALJ considered himself bound by Soc. Sec. Rul. 82-55 (1982), which stated that osteoarthritis corroborated by symptoms of pain and stiffness, and minimal abnormal findings, is not severe. This ruling has been obsoleted by the Secretary. See Soc. Sec. Rul. 85-III-II (1985). See also Hyatt v. Heckler, 807 F.2d 376 (4th Cir. 1986)
 
 
 [4]
 Because we conclude that claimant does not suffer from a severe emotional impairment, we need not consider whether she is entitled to a remand for application of the new mental impairment listing