**Howard J. OSBORN, Appellant,**

v.

**Otis R. BOWEN,\* Secretary of the United States Department of Health and Human Services, Appellee.**

No. 85–1928.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1986.

Decided July 2, 1986.

---

\* Secretary Bowen, Margaret M. Heckler's successor, was appointed during the pendency of this appeal and is substituted as the appellee. *See* Fed.R.App.P. 43(c).

Leroy P. Shuster, Lincoln, Neb., for appellant.

Douglas R. Semisch, Omaha, Neb., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and HARPER,** District Judge.

WOLLMAN, Circuit Judge.

Howard J. Osborn appeals from an order of the district court sustaining the final decision of the Secretary of Health and Human Services denying his application for social security disability benefits. We reverse and remand.

Osborn suffers from chronic obstructive pulmonary disease and cervical spondylosis. The parties agree that Osborn's condition presently renders him disabled. The crucial issue is whether Osborn was disabled on December 31, 1977, the last date on which he met the special earnings requirements of the Social Security Act.

Background

This is Osborn's third application for disability benefits. He applied for and was denied benefits in 1976 and 1980 but did not appeal the Secretary's decision. Osborn applied for disability insurance benefits on August 9, 1982, alleging that because of chronic obstructive pulmonary disease and cervical spondylosis he became disabled on October 10, 1976. After the denial of his current application, Osborn received a hearing before an Administrative Law Judge (ALJ).

Osborn is a fifty-five year old man with a sixth grade education. He worked at a grain elevator in 1961–62. His duties included applying fertilizer to customers' fields, scooping corn, and driving truck. From 1962 to 1968 Osborn was self-employed as an automobile junkyard operator and mechanic. From 1968 to 1976 Osborn was self-employed as custom farmer, doing plowing and combining. He developed breathing problems towards the end of this period and ceased his custom farming operations because he could no longer tolerate the dust associated with that type of work.

Osborn was hospitalized in January of 1977 for bronchitis, at which time Dr. Louis Burgher, an internist, conducted a series of tests that revealed no significant impairment to exercise on a pulmonary basis.

** The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

Osborn's prebronchodilator Forced Expiratory Volume (FEV) values were 3.30 and 2.05 liters, which placed them outside the values constituting an impairment listed in the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 1 (1985). In February of 1977, Dr. Lom Keim, an internist and pulmonary disease specialist, concurred that Osborn suffered no significant impairment to exercise on a pulmonary basis. Dr. Keim concluded that Osborn's smoking habit was the cause of his bronchitis. He continued Osborn's medication and advised him to quit smoking. In February of 1982, Osborn was hospitalized for chronic obstructive lung disease and cervical spondylosis. By this time his prebronchodilator FEV values had deteriorated to a range of .65 to .89 liters, which were well within the range of those constituting a listed impairment.

Osborn testified that starting in 1977 he was required to inhale a medicated air mixture through an air pump device a half hour a day four times daily. He also testified that from 1976 through 1977 he was bothered by dust to the point that every time he found himself in dusty conditions he "was always choked up and * * * couldn't breath." He also suffered from shortness of breath after walking and after climbing stairs.

The ALJ found that although Osborn suffered from moderate obstructive pulmonary disease during the period of his insured status, he was fully capable of performing his past relevant work as an employee of a grain elevator, including the truck driving functions, and that therefore he was not disabled within the meaning of the Social Security Act prior to the expiration of his insured status on December 31, 1977.

Our task on review in these cases is to determine whether the record contains substantial evidence to support the Secretary's decision that the claimant was not disabled. See e.g., Basinger v. Heckler, 725 F.2d 1166 (8th Cir.1984), Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 445 (8th Cir.1983); McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir.1983). Our duty of review, however, also requires us to take into account whatever evidence in the record fairly detracts from the weight of the evidence supporting the Secretary's finding. Parsons v. Heckler, 739 F.2d 1334, 1339 (8th Cir.1984) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)).

After so reviewing the record, we conclude that the case should be remanded for further findings. Although in Basinger v. Heckler, supra, there was little or no medical evidence of the claimant's physical condition during his insured status, in contrast to the extensive medical evidence in the instant case, some of the considerations that led the Basinger court to reverse the denial of benefits and to remand for further proceedings are present here. Specifically, although the ALJ stated that he gave careful consideration to all of the testimony presented at the hearing, we conclude that he failed to give sufficient consideration to Osborn's uncontradicted testimony that as of 1977 he was required to self-administer inhalation therapy at least four times a day. Paraphrasing Basinger, 725 F.2d at 1169, if this testimony is believed it is difficult to conceive how a person in Osborn's condition realistically could have returned to his prior employment as the employee in a grain elevator. If Osborn found it necessary to cease his custom farming operations in 1976 because he could no longer tolerate the dusty conditions inherent in that work, it strains credulity to believe that he could have returned to the dusty environment of a grain elevator.

We reverse the order of the district court and remand the case with directions that the case be remanded to the Secretary for further consideration of the evidence concerning Osborn's ability to return to his past relevant work as a grain elevator employee. If Osborn's testimony regarding

his need for periodic daily inhalation therapy in 1977 is to be discredited, a specific finding to that effect should be made. *Basinger v. Heckler,* 725 F.2d at 1170.

Reversed and remanded.