Richard W. DAWSON, Appellant,

v.

Otis R. BOWEN, Secretary of Health & Human Services, Appellee.

No. 86–1550.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1987.

Decided April 9, 1987.

Robert W. Pratt, Des Moines, Iowa, for appellant.

Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HARPER,[*] Senior District Judge.

MAGILL, Circuit Judge.

Richard W. Dawson appeals the district court's[1] judgment affirming the decision of the Secretary of Health and Human Servic-

---

[*] The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

[1] The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa.

es (Secretary) to deny him disability benefits under 42 U.S.C. § 423 (1982 & Supp. 1984). We affirm.

## I. BACKGROUND.

### A. Facts.

Dawson is a 56–year old male with an 11th grade education, having work experience as a tire builder, a job requiring heavy lifting and contact with raw rubber. He claims to suffer from disabling pain in his right knee and shoulder, and from contact dermatitis, an inflammation of the skin resulting from exposure to rubber.

### 1. Knee Pain.

Dawson has a history of right knee problems dating back to a football injury. In November 1982, he went to Orthopedic Associates, complaining that he had been suffering from knee pain for the past four weeks, as a result of jumping from a truck. Thereafter, in December 1982, he underwent corrective surgery, which he said relieved the pain. On December 19, 1984, he was examined by L.R. Brewer, D.O., at the request of the Social Security Administration. At the examination Dawson told Dr. Brewer that his knee would swell up and he had difficulty walking. The only significant abnormality found by Dr. Brewer was "[m]ild pain to palpation over the lateral joint knee" and "[s]ligh[t] hypermobil[ity] of the patella." Dr. Brewer noted that, "[p]hysical examination shows a 52 year old male in no acute distress. * * * He ambulates without a great deal of difficulty. He gets onto and off the examining table without problem." (Tr. 95.)

Dawson did not return to Orthopedic Associates until May 1985. At that time he stated that he had had no problems with his right knee until eight or nine months before the examination. The only abnormalities found were tenderness around the medial joint line and weakness of the quadriceps. (Tr. 128.) Dawson underwent corrective knee surgery again in June 1985. In a follow-up examination after the surgery, Dawson stated that his knee was doing well, with less pain, and he was found to have minimum effusion and weakness in the quadriceps, requiring that he work on leg raising exercises. (Tr. 130.)

### 2. Shoulder Pain.

Dawson's shoulder pain stems from an injury that occurred twenty years ago when he was thrown from a horse. According to Dr. Brewer, Dawson apparently "tore the ligaments and also had an acromioclavicular separation" from the accident, which required that he undergo surgery and cortisone treatment before he could return to his work as a tire builder. (Tr. 94.) Dr. Brewer reported at his consultative examination on December 19, 1984, that:

The problem is one of pain and decreased range of motion. The pain is intermittent and described as a toothache to a sharp pain. * * * There is decreased strength of grip. *There is decreased motion as he states.* He has dropped things in the past. Cool damp days do aggravate it. He has tingling in his hands and arms, especially with cold weather. *It is aggravated by lifting things,* pulling, working with his hands above his wrist and shoulders. Extended driving aggravates it. *He cannot comb his hair, etc. with his right hand and has to use his left hand alot* [sic]. He is right-handed. For relief he puts a heating pad on it and uses rest. He evaluates his condition as becoming progressively worse.

(Tr. 94.) (Emphasis supplied.) Dr. Brewer concluded that there was "a degenerative process of the lateral aspect of the clavicle and acromion," "increased separation" between those areas, and "evidence of some deterioration of the superior-lateral aspect of the humerus." (Tr. 96.)

### 3. Dermatitis.

Dawson first experienced the symptoms of dermatitis approximately one-and-one-half weeks before seeking treatment from Randall R. Maharry, M.D., on September 17, 1984. Dr. Maharry subsequently diagnosed Dawson as having contact dermatitis resulting from exposure to rubber material at work. He opined that Dawson would

never be able to return to his job as a tire builder because of the contact dermatitis. (Tr. 93.)

### B. Procedural History.

Dawson applied for disability benefits on November 30, 1984, asserting September 10, 1984, as the beginning of his period of disability. His application was denied administratively, and a hearing before an Administrative Law Judge (ALJ) followed, on June 6, 1985.

At the hearing, Dawson testified that his knee problem causes constant pain, swelling, stiffness with too much walking, and a feeling like the joints are grinding together. (Tr. 31–2.) He also stated that the knee problem prevents him from walking more than three or four blocks, standing on a carpet for more than an hour, standing on cement for more than 10 to 15 minutes, and requires that he exercise caution when stooping or squatting, but that he takes only aspirin for the pain. (Tr. 36–7.) Dawson's testimony regarding his shoulder pain was consistent with his statements to Dr. Brewer: that he suffers a decreased range of motion and intermittent pain, which he relieves with a heating pad. (Tr. 37–8.) He also testified that his dermatitis has been aggravated by riding in a car with vinyl seats (Tr. 40), and that when it flares up, which is usually about every two-and-a-half to three weeks (Tr. 47), he applies salve, but does not feel well for two or three days. (Tr. 33.)

Dawson has not been employed since September 1984, when he began suffering from contact dermatitis. (Tr. 28–9.) He testified that he does perform light housework, including cooking supper for his wife, and is able to ride a lawn mower. Tr. 42–4.) In his application for benefits he also stated that he is able to drive a car, and that he performs odd jobs outside, including car care and taking care of animals. (Tr. 76.)

The ALJ found that Dawson's testimony "was self-serving, neither consistent with the objective nor the subjective evidence of record, and lacking in the desirable level of credibility." (Tr. 17.) The ALJ concluded

that Dawson was unable to perform his past relevant work as a tire builder, but that the Secretary had met his burden of showing that Dawson had a residual functional capacity for a full range of light work, so long as no direct contact with raw rubber materials was required, and Dawson was not entitled to disability benefits.

The Appeals Council denied Dawson's request for review on August 16, 1985, making the ALJ's decision the final decision of the Secretary, from which Dawson appealed to the district court. *See* 42 U.S.C. § 405(g) (1982). The district court granted the Secretary's motion for summary judgment, finding that the ALJ's findings were supported by substantial evidence in the whole record. This appeal followed, in which Dawson asserts that the ALJ did not properly consider his subjective complaints or shift the burden to the Secretary to show his capacity to perform light work.

## II. DISCUSSION.

### A. Credibility of Subjective Complaints.

Dawson contends that the ALJ improperly disregarded his subjective complaints of pain and other discomfort.

■ The law of this circuit does not permit an ALJ to dismiss a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *See Brand v. Secretary of Dep't of Health, Education & Welfare*, 623 F.2d 523, 525 (8th Cir.1980). The ALJ must fully consider:

[A]ll of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints if there are inconsistencies in the evidence as a whole, however. *Id.* Furthermore, this court will not overturn a credibility determination by the ALJ which is supported by substantial evidence on the record. *Osborn v. Bowen,* 794 F.2d 385, 387 (8th Cir.1986).

■ The ALJ's determination that Dawson's testimony regarding his disability was not credible is supported by substantial evidence. The ALJ properly discounted Dawson's testimony based on inconsistencies in the record.

Although Dawson testified that his knee problem limited his ability to walk and stand, Dr. Brewer reported that Dawson could walk without much difficulty and had no problem climbing on and off of the examining table. It is also relevant that Dawson reported to his physicians that his June 1985 surgery relieved the pain in his knee and that he only takes aspirin for the pain. *See Polaski,* 739 F.2d at 1322. Furthermore, Dawson told his physician at Orthopedic Associates in May 1985 that his knee problems had not flared up until eight or nine months before the date of the examination, which indicates that the problem did not satisfy the 12 month durational requirement of a disability. *See* 20 C.F.R. § 404.1505 (1986).

Dawson's complaints of pain and disability in his right shoulder were corroborated in part by Dr. Brewer's December 19, 1984 report. The ALJ recognized, however, that Dawson was not able to lift or carry more than 20 pounds, and found that he had a residual functional capacity for light work. *See* 20 C.F.R. § 404.1545 (1986).

Although Dawson was diagnosed as having contact dermatitis, his complaints of the symptoms were not consistent with Dr. Maharry's report. Dawson stated that casual contact with vinyl seat covers exacerbated his condition, despite Dr. Maharry's diagnosis that only prolonged exposure to tire-building material would aggravate the condition. (Tr. 93.) Furthermore, Dawson's testimony that episodes of the dermatitis occurred every two-and-a-half to three weeks and lasted for two or three days, must be viewed in light of his previous written statement to the Social Security Administration that the dermatitis occurred after exposure to rubber. (Tr. 91.) The dermatitis did not arise without an aggravating exposure, as Dawson's testimony at the hearing might imply.

Thus there is substantial evidence on the record that Dawson's skin condition limited his ability to work with rubber products, and caused him some discomfort, but was not totally disabling, nor were his other alleged impairments. The ALJ properly discounted Dawson's subjective complaints to the extent they were inconsistent with the record.

**B. Shift of Burden of Proof.**

Dawson contends that upon his showing that he was unable to return to his work as a tire builder, the ALJ failed to shift the burden of proof to the Secretary to show that he had a residual functional capacity to perform other jobs in the national economy. He argues that the ALJ improperly relied upon the Medical-Vocational Guidelines without regard for his nonexertional impairments of pain and discomfort.

It is well established law in this circuit that once a claimant proves to the ALJ that he cannot return to his past relevant work, the burden of proof shifts to the Secretary to establish that the claimant is not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423 (1982 & Supp. II 1984). *E.g., Tucker v. Heckler,* 776 F.2d 793, 795 (8th Cir.1985). To meet this burden, the Secretary must show that the claimant can perform substantial gainful activity and jobs exist for the claimant in the national economy. *See* 20 C.F.R. § 404.1505 (1986).

■ The Secretary may fulfill this burden by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grid"), if the claimant suffers solely from exertional impairments. *Tucker,* 776 F.2d at 795; *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir. 1982) (en banc). However, when there is a

combination of exertional disability along with alleged disabling pain, and the grid indicates that the claimant is not entitled to a finding of disability based solely on exertional impairments, the ALJ must consider the extent to which the claimant's work capability is further diminished by nonexertional impairments. *Id.* If the claimant's relevant characteristics differ in any material respect from those characteristics contemplated by the grid, the grid may not be applied, and the Secretary must produce expert vocational testimony or other evidence that there are jobs available in the national economy for a person with the claimant's characteristics. *Tucker,* 776 F.2d at 795; *McCoy,* 683 F.2d at 1146. The ALJ's failure to call a vocational expert is not reversible error if there is substantial evidence on the whole record that the claimant's nonexertional impairment does not significantly limit his exertional capabilities, however. *Tucker,* 776 F.2d at 796.

In the present case, the ALJ expressly shifted the burden of proof to the Secretary to show Dawson's ability to perform a job in the national economy. After rejecting Dawson's assertions of pain and impairment due to lack of credibility, the ALJ found that Dawson's only significant exertional limitation was in lifting or carrying more than 20 pounds, and his only nonexertional limitation was the need to avoid prolonged contact with raw rubber. The ALJ then considered Dawson's age, education and work experience and applied the grid, which directed a conclusion of not disabled. Although the ALJ should not have relied on the grid in light of his finding of a nonexertional limitation, *see Tucker,* 776 F.2d at 795–96, this was not reversible error. *See id.* at 796. There is substantial evidence on the whole record that Dawson is able to perform work in the national economy despite his adverse reaction to prolonged contact with raw rubber.

## III. CONCLUSION.

The district court's judgment affirming the final decision of the Secretary is affirmed.