Johnny C. FUNDERBURG, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant.

No. 82–1147.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Aug. 11, 1987.

Denver L. Thornton, El Dorado, Ark., for plaintiff.

J. Michael Fitzhugh, U.S. Atty., Larry R. McCord, Asst. U.S. Atty., Fort Smith, Ark., for defendant.

HANSON, Senior District Judge.

This is a proceeding for judicial review of the decision of the Secretary of Health and Human Services denying Johnny L. Funderburg, the plaintiff, social security disability benefits for the period of April 1, 1981 through November 1, 1983. Judicial review of the Secretary's decision is provided by 42 U.S.C. § 405(g). For the reasons discussed below this court reverses the decision of the Secretary and remands the case for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Funderburg applied for disability benefits in April of 1981, alleging he was disabled as of April 20, 1981, due to severe pain, back problems, arthritis and hearing loss. A hearing on his claim was held in February, 1982, before an Administrative Law Judge (ALJ). The plaintiff appeared pro se. The ALJ subsequently issued a decision denying plaintiff's claims. This decision was adopted as the final decision of the Secretary and properly appealed to this court.

On February 14th, 1984, this court issued an order reversing the Secretary's decision and remanding it for further proceedings. The reversal was necessitated, in part, because the ALJ failed to carefully weigh the subjective evidence of pain, and because of the conclusory nature of the ALJ's credibility finding. A rehearing was held in October of 1984 before the same ALJ. The ALJ issued a decision, subsequently adopted as the final decision of the Secretary, reaffirming its prior decision of non-disability for the period of April 1, 1981 to November 1, 1983, but finding that the plaintiff was disabled as of November 1, 1983. The portion of the decision denying disability is now properly before this court.

## FACTS

Funderburg was fifty years old at the time he applied for benefits. He had a strong earnings record for thirty years, during which time he worked primarily as a heavy equipment operator, truck driver and crane rigger. Funderburg reported his job activities as including: the daily lifting and carrying of objects weighing between ten pounds and one hundred pounds; constant bending; frequent reaching; up to two hours of walking daily; and up to eight hours of sitting daily. His work record includes letters from his co-employers of the past fifteen years stating that he is a willing, trustworthy, and dependable worker. He last worked on April 10, 1981. Funderburg has a 10th grade education.

Funderburg and his wife Ann testified at both hearings before the ALJ. They were represented by counsel only at the second hearing. At the first hearing Funderburg testified that he was unable to continue working because he suffered from: severe and constant upper and lower back pain; arthritis in his joints, including his knees, feet, hands, shoulders, wrists and ankels; a strong roaring sensation in his head caused by either the arthritis or calcium deposits; an inability to grip things with his hands; and hearing loss. He also testified that: he could sit only for short periods of time; he could walk only a few blocks; he slept three to four hours a night; and that his body swelled. (According to his Reconsideration Disability Report filed 6/15/81 his feet would swell so large that the skin burst open.) Funderburg also testified: that he no longer drove, that he couldn't mop a floor, and that he could not mow the lawn. He said he did walk across the street to his father's and down the block to his sister's, that he went to church about twice a month, and took several medications daily for the pain.

Ann Funderburg's testimony largely mirrored her husband's, although she added: that he could not work for more than half an hour without getting severely sick or passing out; that he couldn't remember much; that he could not drive; and that she was advised by a Dr. Salb not to leave him alone because of his depression. She also testified that her husband was a hard worker who never took off work except to go to the hospital, and stated that he had used his vacation time, rather than sick time, when he did go to the hospital.

At the second hearing Funderburg basically repeated his testimony, specifying that he could mow the lawn for three to four minutes, that he had difficulty getting out of bed, that exerting himself in any way caused the pain to override the painkillers, that he would be in bed for two days recovering from the 30 mile drive to the hearing, that he quit hunting because it hurt too much to lift up a gun, and that his fingers also burst open due to the swelling.

At the second hearing Ann Funderburg testified that her husband's condition had continued to worsen. She also testified that her husband was actually worse than he had described, explaining that he could not admit to himself how helpless he was and that he could not accurately remember what he did or did not do. She said he could not walk two blocks, and stated that he would be in bed for a week because of the 30 mile drive to the hearing. She also testified that their two sons worked with her husband and had "covered" for him during the last year and a half that he did work by performing jobs assigned to him which he could no longer perform.

Funderburg's medical record is long and complex, including sixteen reports. The first is from Dr. Cothern, who first treated the plaintiff in 1973 for ear problems and continued to treat him into 1981. Cothern's report records a continuous series of visits from Funderburg related to pain and arthritis. These records reveal the prescription of numerous medications to help Funderburg deal with his pain, although notations show they produced serious side effects and were often ineffective. On March 15, 1976, Cothern diagnosed plaintiff as having "generalized rheumatoid arthritis involving most of his joints". Cothern reaffirmed this diagnosis on December 2, 1981 reporting that he also found Funderburg to be totally and permanently disabled and unable to perform any type of employment. These records also show that plaintiff was hospitalized from March 4 to March 18 in 1977 for "shortness of breath, chronic fatigue and principal joints", and hospitalized again from September 29 to October 3 in 1978.

The second report is from Dr. L.M. Wilson, the physician that treated plaintiff during the second hospital stay. This report indicates that Funderburg was admitted complaining of increasing pain and swelling in his knees, feet, hands, shoulders and neck, with this condition accompanied by headaches and aggravated by weight bearing. Wilson observed thickening and swelling of the fingers, wrists, knees and toes, and a limitation of bilateral rotation in the neck. His impression was

that Funderburg suffered from inflamatory rheumatoid arthritis and an intollerance to medications. He reported that Gold injections, Indocin, Naprosyn and Aspirin had all been tried on plaintiff, but with either no effects or side effects.

The third report is from Dr. Chenoweth, a chiropractor. The report shows Funderburg was treated with manipulation, traction and ultrasound from January 15, 1980 to January 24, 1980. Chenoweth diagnosed Funderburg as having acute cervical myalgia due to subluxation at C7 and C2.

The fourth report is Dr. Salb's, a treating physician at Ashley Memorial Hospital (AMH). This report shows that plaintiff was admitted to AMH from February 6 to February 12 in 1980 for pain in his neck radiating into his arms and pain in his spine radiating into his legs. Salb noted Funderburg had been involved in a motor vehicle accident seven months prior to admission, and reported that the pain had been continuous since it. He diagnosed plaintiff as having degenerative disc disease, with 20 to 30 percent limitation in his lumbar and cervical spine to forward, backward and lateral bending. Salb found the pain to be centered around T3 and T4 and C7 and C8. X-rays revealed calcification in the left hilar region with a calcified nodule in the left base. The report shows that Funderburg was readmitted to AMH on February 15, 1980, three days after being discharged, for continuing pain in his back. Funderburg remained in the hospital for approximately 72 hours this time, undergoing pelvic traction, with the treatment to continue at home. Salb reaffirmed his earlier diagnosis, and also noted that turning of the cervical spine to the left was accompanied by pain and particularly restricted. He found that plaintiff was unable to bend over completely without discomfort, but found no point tenderness in either the cervical or lumbar spine. Other records from Salb show that he found Funderburg 100 percent disabled as of March 17, 1981. A statement by Salb dated July 22, 1981 says Funderburg should limit or avoid stooping, kneeling, lifting, reaching, pushing and pulling, and reports that he had a 30 percent limitation of motion in the spine

and 50 percent in the neck. A statement dated December 14, 1981 reaffirms the diagnosis that Funderburg is totally and permanently disabled.

The fifth report is by Dr. Calloway, an orthopedic for Social Security. Colloway examined Funderburg on May 18, 1981. He reported no severely disabling orthopedic conditions, but found that occupations requiring heavy bending, lifting and irregular movements over uneven surfaces in heavy equipment would cause Funderburg to be more symptomatic. His exam also revealed pain in the upper thoracic spine and pain in the flexion and extension of other parts of the spine at the extremes. His findings on limitation of motion were somewhat comparable to Salb's, although he found lateral bending to be only 30 percent of normal with extension of the spine normal, but painful. The exam included X-rays showing a narrowing at L5, L1 and L2 with slight osteophyte formation at the latter two levels.

The sixth report is Dr. Wise's, a physician who treated Funderburg for hearing problems in July of 1981. The records show plaintiff suffered from fluid in the ears when initially examined, but treatment brought his hearing essentially within normal limits as of July 29, 1981.

The seventh and eighth reports are in the form of Disability Determination and Transmittals, and are signed by Dr. Davidson and Dr. Hawley. The record indicates that neither of these two physicians actually examined Funderburg and that they made their diagnosis solely on the basis of other medical reports. Davidson, who apparently reviewed only the report of Calloway and the AMS record for the February 15, 1980 hospitalization, diagnosed Funderburg as having "Low Back Pain" and found him not to be disabled. Hawley did review more reports than Davidson, but evidently never reviewed any of the first three reports summarized above. Hawley diagnosed Funderburg as having low back pain, allergy to wasp sting, mild enphysema and fluid in the ears. He concluded plaintiff was not disabled.

The ninth report is a social security ordered rheumatologic evaluation filed by Dr. Leonard on March 2, 1982. Leonard disagreed with earlier diagnosises of rheumatoid arthritis finding Funderburg to be suffering from mechanical low back pain without any significant degenerative change, and primary fibrositis. Fibrositis is a disease marked by pain and stiffness of the white fibrous tissue of the body, especially of the muscle sheaths used in movement. *Dorland's Illustrated Medical Dictionary* 556 (24th ed. 1965). Leonard found no swelling, tenderness or limitation in any peripheral joints, and also found hip motions and left and right lateral bending to be normal. He also noted that Funderburg's pain was aggravated by prolonged standing, stooping or bending, and improved with either lying down or walking.

The tenth report is from Dr. Burns who examined Funderburg on April 9, 1982. The report discloses only that he diagnosed plaintiff as having fibrositis and significant secondary depression.

The eleventh report, and the last considered at the first hearing, is a psychiatric medical report filed by Dr. Kimball on April 21, 1982. Kimball ruled out any emotional or psychological pain disorders and found that Funderburg's psychiatric impairments only mildly affected his residual functional capacity. Kimball did not obtain a psychological evaluation for his report.

After the remand five additional reports were added to the record. These reports, in their present form, are of only limited value for determining whether plaintiff was disabled prior to Nov. 1, 1983 because they do not indicate when the disabilities discussed first began. The first of these is another report from Dr. Salb, filed on February 27, 1984. Salb reaffirmed his diagnosis that plaintiff was unable and incapable of doing any physical work of any sort. He also reported that plaintiff now had only 30 percent motion in the movement of his neck, along with increasing loss of motion in his shoulders, hands, hips, spine and knee. He noted that Funderburg was still in pain most of the time.

The second report is from Dr. Stevens, a clinical psychologist. Stevens prepared a psychological and vocational evaluation after performing numerous psychological tests. Stevens found that Funderburg suffered from a chronic brain syndrome that "blocks him from functioning adequately in almost every area of behavior." Stevens also found persistent depressive effect, periods of anxiety with tension, and psychophysiological problems. He concluded that Funderburg was incapable of competing in the labor market. Stevens also reported that his tests indicated plaintiff had no usable fine motor dexterity, and that while Funderburg was strongly motivated to try to complete tasks, his physical tolerances for sedentary work was no more than 15 to 20 minutes for any competitive level of functioning.

The third report is by Ms. Campbell, a psychological intern who did a psychological evaluation. Campbell found severe depression and suicidal ideations. She also found plaintiff to be multipally handicapped in the areas of intellectual and emotional functioning, as well as physical functioning.

The fourth report is a psychiatric medical report by Dr. Llana dated September 13, 1984. Llana diagnosed plaintiff as suffering from chronic depressive reaction because of his incapacitation, and found him to have degenerative arthritis of the spine, along with arthritis of the knee joints and the right shoulder joint. He observed that plaintiff limped, that he could not raise his right shoulder, and that he could only lift the right arm up to the level of his shoulder. He also found that plaintiff had "no known work-related activities impaired by his activities," although he reported that plaintiff had poor to no ability to deal with the public or to maintain attention and concentrate.

The final report is by Dr. Hartmann, who examined Funderburg on December 3, 1984. Hartmann diagnosed plaintiff as having lumbar disc disease and chronic strained ligaments in the cervical spine. He concluded that Funderburg's back and neck were inconsistent with work requiring

repeated bending, heavy lifting, working in a bent over position, or use of arms in outstretched or overhead position.

## DISCUSSION

The standard for reviewing social security cases is whether the decision of the Secretary is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (1982). This requires more than merely looking for such relevant evidence as a "reasonable mind might accept as adequate to support a conclusion." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). Instead, a more scrutinizing analysis is required in which the reviewing "court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Id.* at 1199.

The Social Security Act states that:

[A]n individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *.

42 U.S.C. § 423(d)(2)(A) (West Supp.1987).

The Secretary has established a five step sequential evaluation process the ALJ is to follow when determining whether a person is disabled. 20 CFR §§ 404.1520, 416.920 (1986). The validity of this process was affirmed by the Supreme Court in *Bowen v. Yuckert*, —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). At step one it is determined whether the claimant is engaged in substantial gainful activity. *Id.* at ——, 107 S.Ct. at 2291. If he is not, the decisionmaker proceeds to step two, to determine whether the claimant:

suffers from 'an impairment or combination of impairments ... [that] significantly limit[s] ... physical or mental ability to do basic work activities.' 20 CFR § 404.1521(a) (1986). 'Basic work activites,' the regulation says, include 'walking, standing, sitting, lifting, pulling, reaching, carrying, or handling ... see-ing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, coworkers and usual work situations ... [d]ealing with changes in a routine work setting.' § 404.1521(b)(1)-(6).

*Id.* at ——, 107 S.Ct. at 2298 (O'Connor, S., concurring).

In this case the ALJ found that Funderburg was not working and proceeded to step two. At this step the ALJ found that plaintiff's complaints of disabling pain and discomfort were "not credible", and that "claimant does not have any impairment for the requisite period of time which significantly limits his ability to perform basic work-related functions, with treatment and, therefore, the claimant does not have a severe impairment of the required duration." (Tr. 11) In support of these findings the ALJ noted that "the claimant has complained of a number of conditions which, if verified would be severe." The ALJ said, however, that "the preponderance of the medical evidence of record is completely inconsistent with the claimant's allegations of pain and limited ability" and "that the total evidence of record will not support a finding that the claimant suffers from an impairment or combination of impairments which would be considered severe within the meaning of the Social Security Act." The ALJ summarized that "[i]n short, the evidence of record fails to establish the presence of any severe impairment, exertional or nonexertional, which would last in disabling proportion for a continuous period of more than 12 months." The ALJ did not go beyond the second step of the evaluation in the first decision.

In the second decision, the ALJ reaffirmed its initial findings with regard to the period from April 1, 1981 to November 1, 1983. This decision states "it was not reasonable to conclude that the minimal clinical findings could be the basis for the degree of pain alleged" and that the claimant's daily activities "do not indicate the existence of pain to such an extent as to be disabling." (Tr. 183)

These statements and findings indicate that the ALJ is misapplying the second step of the five step evaluation. This is evidenced, in part, by the way the ALJ uses the words severe and disabling interchangeably at step two, but mainly by the record itself.

■ A majority of the Supreme Court has adopted what is generally described as the "de minimus standard" with regard to the severity requirements of step two. *Yuckert,* —— U.S. at ——, 107 S.Ct. at 2299 (O'Connor, S. and Stevens, J., concurring), —— U.S. at ——, 107 S.Ct. at 2310 (Blackmun, H., Brennan, W. and Marshall, T., dissenting). *See also Brown v. Bowen,* 827 F.2d 311, 312 (8th Cir.1987). In order to be valid under the terms of the Social Security Act the severity threshold step must adopt a standard "that denies disability claims only if the medical impairment is so minimal that no set of vocational factors, even if fully considered, could result in a finding of disability." *Yuckert,* —— U.S. at ——, 107 S.Ct. at 2311 (Blackmun, H., Brennan, W., and Marshall, T., dissenting). In other words, although the Act:

> authorizes the Secretary to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability. * * * The statute does not permit the Secretary to deny benefits to a claimant who may fit within the statutory definition without determining whether the impairment prevents the claimant from engaging in either his prior work or substantial gainful employment that, in light of the claimant's age, education, and experience, is available to him in the national economy. Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits [at step two]. *See Evans v. Heckler,* 734 F.2d 1012, 1014 (CA4 1984); *Estran v. Heckler,* 745 F.2d 340, 341 (CA5 1984) (per curium); *Brady v. Heckler,* 724 F.2d 914, 920 (CA11 1984).

*Id.* at ——, 107 S.Ct. at 2299 (O'Connor, S., and Stevens, J., concurring).

The three cases approvingly cited by Justices O'Connor and Stevens provide further evidence that they have adopted the same de minimus standard as Justices Blackmun, Brennan and Marshall. The cases hold that:

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Evans,* 734 F.2d at 1014, *Estran,* 745 F.2d at 341, *Brady,* 724 F.2d at 914. The *Brady* court also held that the term "significant" limitation requires only that "the limitation must not be meaningless." 724 F.2d at 920.

■ Regardless of this standard, the ALJ never moved beyond step two. This court, after reviewing the substantial evidence in the record as a whole, holds that the ALJ must be reversed on this point, and finds that the record establishes that plaintiff's "basic work activities" were "significantly limited" within the meaning of the Social Security Act. This court recognizes that this type of determination is one normally left to the Secretary. However, when the record compels such a finding, it is within the proper role of a court. *See Gavin v. Heckler,* 811 F.2d 1195, 1201 (8th Cir.1987), *Cook v. Bowen,* 797 F.2d 687, 691 (8th Cir.1986), *Smith v. Heckler,* 735 F.2d 312, 319 (8th Cir.1984).

The record compels such a holding in this case. The medical records simply do not support the ALJ. Instead, all of the records which actually address the more limited questions of whether Funderburg's ability to sit, reach, stand, lift, remember, etc., are significantly limited, state that they are. (Even Dr. Llana's report, which states that Funderburg has no known work-related activities impaired by his arthritis, actually indicates that plaintiff's activities are limited by his impairments for purposes of step two. For example, the report notes that Funderburg: limped; could not raise his right shoulder; could only lift his right arm up to the level of his

shoulder; had poor to no ability to maintain attention and concentrate; and had poor to no ability to deal with the public.) It is true that some of these same reports conclude that plaintiff is "not disabled", but that is not the question being asked at step two of the analysis. Furthermore, all of the reports expressly recognize that Funderburg experiences pain because of his impairments. Those reports which address the question also recognize that this pain is heightened and aggravated when he performs certain basic work activities.

Because the record shows that basic work activities were limited it is necessary to go on to step three of the evaluation process, which requires that the Secretary determine whether plaintiff's impairments meet or equal one of the listed impairments at 20 C.F.R. Part 404, Subpart P. App. 1. *Yuckert,* —— U.S. at ——, 107 S.Ct. at 2291. If there is the equivalent of a listed impairment the plaintiff is found to be disabled, if there is not, the Secretary goes on to the fourth step of the process. *Id.* at ——, 107 S.Ct. at 2291.

The record is not sufficient for this court to make a determination as to whether claimant's impairments meet or equal one of the listed impairments. Thus it is necessary to remand the case to the Secretary for a determination on this matter. Should the Secretary find that plaintiff's impairments do not equal a listed impairment, the Secretary must go on to the fourth step of the process which is a determination of whether plaintiff can perform his previous work. *Id.* at ——, 107 S.Ct. at 2291.

■ The substantial evidence on the record as a whole compels this court to hold that plaintiff was unable to perform his previous work. The record lacks any evidence indicating that plaintiff could, on a daily basis, perform the type of physical activity required by his former job. There simply was no testimony stating that plaintiff had the ability to return to his old job, and there is no statement in any of the voluminous medical reports stating that plaintiff could return to his former job or perform all of the activities his former job required. Instead, those reports address-

ing the topic either expressly or impliedly state that Funderburg did not have the abilities required for his former job and that his condition would be seriously aggravated by the type of physical activity his former job required.

Thus, unless the Secretary determines that Funderburg is disabled at the third step of the process, it must advance on to the fifth and final step of the evaluation—a determination of whether plaintiff is able to perform other work in the national economy. This type of determination is also beyond the scope of this court at this time, requiring the decision to be remanded to the Secretary for a determination of this point. However, in order to avoid further delay, and because the opinions of the ALJ, as adopted by the Secretary, exhibit either error or confusion on this part of the process, this court reminds the Secretary of several things.

■ First, because Funderburg has demonstrated an inability to return to his past relevant work, the burden of proof shifts to the Secretary to establish the presence of other jobs in the national economy that Funderburg can perform. *Nunn v. Heckler,* 732 F.2d 645, 649 (8th Cir.1984). Included in this, is the requirement that the ALJ expressly recognize the shift in his written decision. *Talbott v. Bowen,* 821 F.2d 511 at 514 (8th Cir. June 25, 1987), *Tucker v. Heckler,* 776 F.2d 793, 795 (8th Cir.1985).

■ Secondly, "the report of a consulting physician who examined that claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Turpin v. Bowen,* 813 F.2d 165, 170 (8th Cir. 1987), *Lanning v. Heckler,* 777 F.2d 1316, 1318 (8th Cir.1985). Instead the ALJ is required to give substantial weight to the treating physician's opinion in the evaluation process, although it may be discounted if it is unsupported by the evidence. *Turpin,* 813 F.2d at 171. Furthermore, in evaluating the medical evidence, consideration should be given to the qualifications of each physician, the fairness of each physi-

cian in evaluating complaints of pain and physical impairments, the thoroughness of the examination and the physicians reliance on clinical and diagnostic aids. *Smith v. Schweiker*, 728 F.2d 1158, 1163 (8th Cir. 1984). Additionally, the ALJ must either attempt to reconcile the medical reports of the treating physicians with those of the consulting physicians, or direct interrogatories to each of the physicians to obtain a more substantiated opinion of the claimant's capabilities *and the onset of his disabilities.* See *Smith v. Schweiker* at 1164, *O'Leary v. Schweiker*, 710 F.2d 1334, 1342 (8th Cir.1983).

Third, the ALJ may not dismiss a claimant's subjective complaints of pain and discomfort "solely because they are unsupported by objective medical evidence." *Dawson v. Bowen*, 815 F.2d 1222, 1225 (8th Cir.1987). Instead, the ALJ *must fully consider and discuss* all of the evidence relating to prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the applicant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Dawson* at 1225, *Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir.1987).

Finally, "where a claimant suffers from a non-exertional impairment, such as pain, alone or in combination with exertional impairments, that significantly limit his ability to perform the *full* range of work contemplated by the Medical-Vocational Guidelines, the ALJ may not rely on the guidelines to satisfy the Secretary's burden of proof, but must instead produce expert vocational testimony." *Talbott* at 515.

## CONCLUSION

Because of the foregoing reasons the portion of the Secretary's decision denying plaintiff benefits prior to November 1, 1983 must be reversed and the case remanded to the Secretary for further proceedings consistent with this opinion.

IT IS THEREFORE ORDERED that the portion of the decision denying plaintiff benefits prior to November 1, 1983 be reversed and the case is remanded to the Secretary for a new decision in accordance with this opinion.