Mary GUNNELS, Appellant,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Appellee.

No. 88–1328.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1988.

Decided Feb. 14, 1989.

Denver L. Thornton, El Dorado, Ark., for
appellant.

Lawrence M. Meister, Baltimore, Md., for
appellee.

Before HEANEY * and BEAM,
Circuit Judges, and STUART,** Senior
District Judge.

HEANEY, Circuit Judge.

Mary Gunnels appeals from the district
court's order affirming the decision of the
Secretary of Health and Human Services
denying Gunnels' application for disability
benefits under the Social Security Act, 42
U.S.C. §§ 416(i) and 423. We reverse and
remand.

I. BACKGROUND

Gunnels filed for disability benefits in
September, 1985, alleging disability since
February 5, 1984, as a result of congestive
heart failure and chronic obstructive pul-
monary disease. The application was de-
nied initially and on reconsideration. Pur-
suant to Gunnels' request, an ALJ held a
hearing on April 18, 1986.

Gunnels was born in June, 1936, has a
high school education, and was employed
for fifteen years as a switchboard operator,

* The HONORABLE GERALD W. HEANEY as-
sumed senior status on January 1, 1989.

** The HONORABLE WILLIAM C. STUART, Unit-
ed States Senior District Judge for the Southern
District of Iowa, sitting by designation.

a receptionist and most recently as a part-owner and manager of a dress shop.

Gunnels' major medical impairments include congestive heart failure, mitral valve disease, obstructive lung disease and shortness of breath after exertion. She also appears to be unable to tolerate stressful situations, as this aggravates her heart condition.

The evidence shows that Gunnels was hospitalized initially in October 1974, due to congestive heart failure and mitral stenosis. She underwent mitral valve surgery at that time. She was hospitalized in 1978 for pneumonia and three times in 1983 for chronic pulmonary disease.

Gunnels received a mitral valve replacement and a pacemaker in January 1984. These operations were performed by Dr. A.J. Thompson, a cardiac specialist. Gunnels was hospitalized in March 1984, for pacemaker repositioning. Dr. Thompson monitored Gunnels' pacemaker and her heart condition until October, 1985, at which time Gunnels returned to her family physician, Dr. Allen S. Pirnique, for regular checkups. Over the two years after the heart surgery, Dr. Thompson saw Gunnels approximately five times. Two weeks after the pacemaker insertion, Dr. Thompson's examination revealed a regular heart rhythm and near normal heart size.

In July 1984, Gunnels was admitted to the hospital for ear and back problems related to her medication. Gunnels' medication was adjusted and she was discharged after several days rest. On September 25, 1984, Dr. Thompson reported that Gunnels suffered from palpitations and that she was bothered by her upcoming divorce, but that she denied having angina, shortness of breath, or dyspnea on exertion. This September examination also revealed that Gunnels had clear lungs with mild bibasilar crackles, regular heartbeat, and an overall improvement of her chest x-ray. In April 1985, Dr Thompson reported that Gunnels had normal heart size and that she continued to deny angina, shortness of breath, or dyspnea.

On October 31, 1985, Dr. Thompson reported that the site of Gunnels' pacemaker was sore and sensitive to the touch. His report stated that Gunnels suffered from moderate dyspnea on exertion and mild right facial numbness, but no angina or shortness of breath. Several months later, Dr. Thompson used this examination to classify Gunnels according to the American Heart Association rating system as a Class II–C.[1]

In a letter dated September 26, 1985, Dr. Pirnique reported that Gunnels was suffering from possible gout, mitral valve disease, significant obstructive lung disease, and shortness of breath after exertion. Dr. Pirnique reported that, as a result of these medical impairments, Gunnels had difficulty working at her dress shop.

On November 8, 1985, Dr. Pirnique conducted a consultative examination at the request of the Social Security Administration. He reported that Gunnels suffered from shortness of breath with some chest pain. He stated that Gunnels' breathing problems prevented her from performing such activities as sweeping, vacuuming, and climbing stairs. She could no longer do the tasks required to work in her dress shop and she had sold her interest in the store to her partner. He confirmed that she suffered from organic heart disease, mitral valve disease, heart block, and obstructive lung disease. He described Gunnels as having clear lungs, a bronchitic-sounding cough, regular heart rhythm, and a normal functioning pacemaker. Using the American Heart Association rating sys-

1. The American Heart Association "Classification of Patients with Diseases of the Heart" contains these relevant sections:
    Functional Capacity
    Class II  Patients with cardiac disease resulting in *slight* limitation of physical activity. They are comfortable at rest. *Ordinary physical activity* results in fatigue, palpitation, dyspnea, or anginal pain.

Therapeutic Classification
    Class C  Patients with cardiac disease whose ordinary physical activity should be moderately restricted, and whose more strenuous efforts should be discontinued. (emphasis added).

tem, Dr. Pirnique classified Gunnels as a III–C on the basis of dyspnea occurring at less than normal activities. He believed this was in some degree due to the lung disease, although the heart condition also limited her activities considerably.[2]

A November 15, 1985, residual functional capacity assessment resulted in findings that Gunnels was limited to lifting no more than twenty pounds, standing or walking no more than six hours a day, sitting no more than six hours a day, and that she was precluded from working around high voltage equipment. It was reported that Gunnels complained of sharp chest pain and shortness of breath brought on by activities such as sweeping and climbing stairs.

At an administrative hearing on April 18, 1986, Gunnels testified that she is five feet seven inches tall and weighs one hundred twenty-five pounds. She does a minimal amount of housework with her daughter's help, reads, and watches television. She stated that at her doctor's suggestion she walks, at her own pace, one mile or more a day, and that she does not pick up objects or walk up stairs. She described her circulation as "not that good" and stated she could not sit in one position very long. Gunnels testified that she suffers from shortness of breath brought on by physical activity or stress, from stress-induced pain in the form of muscle spasms in her chest, and from headaches due to her medication.[3] She also testified that she does not engage in any activity due to her daily fear that activity will exacerbate her condition. Gunnels indicated that she cannot communicate with people without experiencing stress. Because she fears a heart attack brought on by stress, Gunnels stated that she could not return to any of her former occupations. When the ALJ stated that he presumed Gunnels' previous position as a switchboard operator or receptionist was a sedentary job[4] and asked whether she could return to that job, Gunnels responded that she could not.

The ALJ concluded that Gunnels had not engaged in substantial gainful activity since February 15, 1984, and that the medical evidence established that Gunnels suffered from the severe impairments of organic heart disease and chronic obstructive pulmonary disease. Although the ALJ described Gunnels as unable to engage in sustained strenuous physical activity, prolonged walking in excess of one mile, lifting objects, or working around pulmonary irritants, he concluded that Gunnels retained "the residual functional capacity to engage in light work activity, which would not preclude her from engaging in her past relevant work as a switchboard operator."[5] In making this determination, the ALJ specifically relied on Dr. Thompson's Class II–C rating as opposed to Dr. Pirnique's Class III–C rating. The ALJ stated that the opinion of Dr. Thompson, Gunnels' treating cardiologist, was given more weight because Dr. Pirnique had not monitored Gunnels specifically for her heart problems.

Gunnels asserts on appeal that the ALJ failed to develop the record concerning the job duties of a switchboard operator/receptionist and the relation of these duties to Gunnels' alleged nonexertional impairments of stress-intolerance and fear of activity. She also challenges the ALJ's reliance on Dr. Thompson's Class II–C rating.

**2.** Class III identifies "[p]atients with cardiac disease resulting in *marked* limitation of physical activity. They are comfortable at rest. *Less than ordinary activity* causes fatigue, palpitation, dyspnea, or anginal pain." (emphasis added).

**3.** According to a list Gunnels submitted, her medication consisted of Furosemide, Chlordiazepoxide Hcl. with Clidinium Bromide, Premarin, Lanoxin, Coumadin, and Darvocet–N 100. Most of these medications were prescribed by Dr. Pirnique.

**4.** In Gunnels' initial application, she described the duties of a switchboard operator and receptionist as consisting of two hours of walking and six hours of sitting with no lifting or carrying of objects.

**5.** Light work is defined as lifting no more than twenty pounds with frequent lifting or carrying up to ten pounds, walking or standing a great deal, and the pushing and pulling of arm or leg controls if sitting is required most of the time. 20 C.F.R. § 404.1567(b) (1988).

## II. DISCUSSION

In reviewing disability determinations, this Court must ascertain whether the Secretary's decision that the claimant is not disabled is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (Supp. III 1985); *Osborn v. Bowen*, 794 F.2d 385, 387 (8th Cir.1986). This review must take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). Initially, the claimant carries the burden in establishing entitlement to benefits by proving the existence of a medically determinable impairment or impairments which preclude the performance of past relevant work. *Turpin v. Bowen*, 813 F.2d 165, 170 (8th Cir. 1987). The ALJ also has a duty to fully develop the record, *Jennings v. Secretary of the Dept. of H. & H.S.*, 770 F.2d 747, 748 (8th Cir.1985), and to ascertain the demands of past work in order to compare the claimant's present physical capabilities to these demands. *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir.1984); *see also, Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir.1980) (ALJ must show that claimant is capable of performing the activities that the job requires).

■ Gunnels argues that the ALJ failed to consider the effect of her psychological and physical reactions to stress on her ability to perform her past work as a switchboard operator. We agree. Gunnels testified at the hearing that any stress or physical activity brings on shortness of breath. She experiences daily fear that any activity will exacerbate her condition. She also claims to experience stress when communicating with people.

The ALJ failed, however, to investigate these complaints or to develop the record as to whether Gunnels' stress intolerance would preclude her from working as a switchboard operator. It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.1985). The current regulations provide that if a claimant's "medical sources cannot give * * * sufficient medical evidence about an impairment" to determine whether the claimant is disabled, the Secretary may order a consultative examination. 20 C.F.R. § 416.917. Although Dr. Pirnique performed an examination at the Secretary's request, he did not investigate her stress intolerance. He did not formulate an opinion regarding Gunnels' fear of exertion and the effect this would have on her ability to work as a switchboard operator.

In this case, Gunnels argues, and we agree, that the ALJ erred in holding that she could perform work as a switchboard operator without sufficient evidence to support a finding that her stress intolerance would not affect her performance. We believe that the ALJ should seek additional evidence to determine whether Gunnels will be able to handle the stress of a switchboard operator's job.

■ Gunnels also takes issue with the decision of the ALJ to rely exclusively on Dr. Thompson's classification of Gunnels' functional capacity as II–C. Dr. Pirnique, her monitoring physician for eleven years, classified Gunnels as a III–C. It is clear from the record that Dr. Pirnique considered all of Gunnels' physical impairments, including the heart condition and her obstructive lung disease, in making this classification. It is unclear from Dr. Thompson's letter, however, whether he considered any of Gunnels' health problems other than her congestive heart problems and mitral valve disease in making his determination. We believe that the ALJ should request clarification from Dr. Thompson as to whether he considered Gunnels' lung impairment and stress intolerance when computing the Class II classification.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with instructions to remand the case to the Secretary for further action consistent with this opinion.